## Nelson County Fiscal Court, et al. v. McCrocklin.

(Decided April 24, 1917.)

### Appeal from Nelson Circuit Court.

1. Counties—Fiscal Court Management and Taxation—Creation of Debts.—Fiscal courts must take account of the amount reasonably necessary to defray the current and fixed expenses of the county in determining the amount of the indebtedness that may be created during the year, and can only create such indebtedness as can be paid out of the income and revenue for the year after subtracting therefrom the amount necessary to defray the fixed charges and expenses of the county.

2. Counties—Fiscal Court Management and Taxation—Creation of Debts.—Salaries and fees of county officers and the amount annually required for the maintenance of public buildings and public institutions, not including roads or bridges, are fixed charges which must be paid out of the revenue of the year.

3. Counties—Fiscal Court Management and Taxation—Creation of Debts.—Section 157 of the constitution limits the rate of taxation that taxing authorities may levy without the assent of the people and prohibits counties, cities and towns from becoming indebted in any year in an amount exceeding the income and

revenue provided for that year, and in contracting debts the taxing authorities must take account of the fixed charges against the county, city, or town.

4. Counties—Fiscal Court Management and Taxation—Creation of Debts—Constitutional Law.—The limitations laid down in section 157 do not affect the right of the people to create such debts and authorize the levy of such taxes as they desire within the limitations of section 158 of the constitution.

5. Counties—Fiscal Court Management and Taxation—Creation of Debts—State Aid Road Fund.—When a county has complied with the law in respect to receiving State aid, and there has been set apart to it by the State Department of Public Roads a sum of money to be used in the construction of roads, this State fund may be computed as an asset of the county in determining the amount of indebtedness it may incur during the year.

REDFORD C. CHERRY and KELLY & KELLY for appellants.

J. SMITH BARLOW for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming on original appeal and reversing on cross-appeal.

Many of the questions arising on this record were determined by this court in the case of McCrocklin v. Nelson County Fiscal Court, which may be found reported in 174 Ky. 308. In that case the questions came up on a motion to reinstate an injunction and were considered by the whole court and all of the judges concurred in the opinion of the Chief Justice. When the case went back for final hearing by the circuit court, some new issues not involved in the injunction case, turning on questions of fact as well as questions of law, were brought into the case and decided by the lower court, and from its final judgment the case is here again on the appeal of the fiscal court, with a cross-appeal by McCrocklin.

At the very outset of this opinion we wish to say that the principles of law announced by Chief Justice Settle in the former opinion are reaffirmed, and so it will be necessary to consider only such questions of law and fact as were not fully disposed of in the former opinion.

The lower court ruled that the fiscal court must annually take account of the amount reasonably necessary to defray the current and fixed expenses of the county in determining the amount that it could expend each year in improvements and for public purposes out of the sum that might be raised by the levy of that year within the

constitutional limitations when there was added to this sum other available assets of the county due and collectible in the year. In other words, that the annual, fixed governmental expenses of the county must be treated in each year as a liability of the county to be paid out of the income for that year, as much so as if these fixed charges were debts created by the county during the year.

Of this ruling the county complains, insisting that in estimating the annual liabilities of the county the annual governmental expenses or fixed charges should not be computed as a liability or indebtedness of the county for the year, thus leaving the county the privilege of creating debts, excluding the current fixed expenses and charges, in any amount in its discretion not exceeding the total income of the year. In the former opinion it was strongly intimated that the sum necessary to defray the annual governmental expenses of the county for salaries and the like, which are to be regarded as fixed charges against the county, must be treated as an indebtedness of the county in estimating the sum the county may have to expend for other legitimate purposes during the year, although this question was not considered at length in the opinion. It is, however, an important question not only to Nelson county, but to all the other counties in the state, and, being directly presented in this record, will receive the attention that its importance demands.

Section 157 of the constitution fixes in plain terms the tax rate for towns, cities, counties and taxing districts and expressly provides that this tax rate shall not exceed at any time the amount mentioned in the section. This is the tax rate that the taxing authorities of the town, city, county or taxing district may impose by virtue of their office without submitting the question to the people. After setting out this tax rate the section then reads:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

This section lays down certain mandatory rules that fiscal courts, city councils and other taxing authorities must observe. It is so plainly written and so easily understood that there is no room for two opinions about its meaning. In the first place, it limits the rate of tax that these taxing authorities may levy without the assent of the people, and in the second place, it prohibits the county, city, town, taxing district, or other municipality from becoming indebted in any manner or for any purpose in any year in an amount exceeding the income and revenue provided for that year. In other words, it lays down a safe and sound business rule in the conduct of public affairs, and if this rule were strictly observed, no county, city, town, taxing district, or other municipality could ever create in any year an indebtedness that could not be paid out of the income and revenue of that year. It would further follow from an observance of this rule that no county, city, town, or taxing district would ever have at the end of the year an indebtedness that could not be paid out of the income and revenues of the year, or an indebtedness that would have to be carried over to some other year, or taken care of in some other way. The difficulties gotten into by some cities, towns and counties that now have outstanding large debts not created or authorized by a vote of the people, have resulted from the failure of fiscal courts, city councils and other taxing authorities to observe the mandates of this section. Possibly some of this indebtedness in excess of the income was created under the authority of former opinions of this court which will be later noticed, and which seem to hold that fixed annual charges or current expenses may be excluded from consideration in determining the amount of indebtedness that may be incurred.

But, plainly, as it seems to us, the requirements of section 157, that the indebtedness in any year shall not exceed the income of the year, cannot be carried out unless the current expenses or fixed charges of the county are estimated in determining the amount of the indebtedness. This can be demonstrated by a simple illustration. Let us suppose that the estimated income of a county for the year 1917, including all assets derivable from every source to which the county may look for revenue for the year, will be twenty-five thousand dollars. Now, if this is the full limit of its expected income and revenue for the year from every source, this is the full amount that it

can spend during the year for every purpose, because if its expenditures exceed this amount, it is obvious that at the end of the year the county will have a debt that cannot be paid out of the income and revenue of the year.  Everybody knows that every county has certain fixed current expenses that must be paid every year; for example, the salaries of the county officers, and the expenses necessary in maintaining public buildings and public institutions.  These expenses must be and are paid out of the income and revenue of the county for the year, and if we should suppose  that  these  expenses amount to ten thousand dollars and that ten thousand dollars of the income and revenue of the county was appropriated to their payment, there would be only fifteen thousand dollars left to be appropriated to other county purposes.  Let us suppose now that the fiscal court ignores these fixed charges against the county or takes no account of them in estimating the amount that it may expend in the creation of debts for county and governmental purposes, and these debts amount to twenty-five thousand dollars.  Clearly at the end of the year there would be ten thousand dollars of the indebtedness of the county unpaid, and equally clear that the county had exceeded in the creation of debts by the sum of ten thousand dollars, the income and revenue of the county. There is no escape from this conclusion.

And, yet, in the face of these incontrovertible facts, the argument is made that the county may expend in the creation of debts the full amount of its income and revenue for the year without taking any account of the sum that it has paid out of its income and revenue during the year for the purpose of defraying the fixed salaries of the officers of the county and other necessary charges against the county.  What is the necessary result of this method of fiscal court management  There can be only one, and that is that at the end of the year the county will have a debt of ten thousand dollars created during the year in excess of the income and revenue of the year.

Now how is this ten thousand dollar debt to be paid? The practice pursued by some fiscal courts has been to issue bonds and borrow the money to pay it.  The practice of others has been to issue notes or certificates of the county and on these notes or certificates borrow the money to pay it.  No permission or authority can be found in section 157 that would permit the county authorities

to thus create an indebtedness against the county. And yet it is a matter of common knowledge that many fiscal courts have for years been creating debts against the county in this way, and lately, as appears in this record, the fiscal courts have assumed the authority to issue bonds against the county to raise the money to pay the indebtedness so created. This indebtedness created in the manner we have indicated, whether represented by bonds issued by the fiscal court or by certificates or other forms of obligation, should be and must be paid by the county, and this simply because authority to create debts each year to the full amount of the income and revenue for the year without taking any account of the fixed charges of the county seems to have been authorized by this court in O'Bryan, City Clerk, v. City of Owensboro, 113 Ky. 680, and Hopkins County v. St. Bernard Coal Co., 114 Ky. 153; Menar v. Sanders, 169 Ky. 285, and perhaps other cases. The creditors of a county who have invested their money on the faith of these opinions must not lose it. Obligations of the county heretofore issued on the faith and credit of these opinions, and which represent the difference between the amount of indebtedness a county might incur if no account were taken of fixed charges and expenses and the amount it might incur if these charges were subtracted from the income and revenue, are to be treated as valid debts of the county.

But, in order that there may be no room for future misunderstanding or doubt on this subject, we expressly overrule so much of each of the foregoing cases as announces principles in conflict with what has been said in this opinion, and for the guidance of fiscal courts wish to say that there must be deducted from the income and revenue of the county for each year such a sum as will be reasonably sufficient to satisfy the current expenses or fixed charges of the county for the year, and that the difference between this sum and the sum of the income and revenue of the county for the year is the only amount against which fiscal courts are authorized to create an indebtedness, so that when the end of the year comes the income and revenue for the year will be sufficient to pay the debts created in that year, as well as the fixed or current expenses, and no indebtedness will be left over.

We have not in the course of this opinion undertaken to define accurately what we have described as fixed charges or current expenses that each county must pay each year out of the income and revenue of that year,

because some counties may have certain fixed charges that must be paid each year differing in material respects as well as in amounts from the fixed charges of other counties. But in a general way it may safely be said that the salaries and fees of county officers, the amount annually required for the maintenance of public buildings and public institutions, not including roads or bridges, are fixed charges. These fixed charges must be paid. The fiscal court has no discretion as to the creation or payment of these items of annual expenses that are indispensably necessary to carry on the governmental affairs of the county. In addition to these annual fixed charges there are many other items of expense to which the public funds of the county may be applied; for example, the purchase of road machinery and the construction and maintenance of public roads and bridges. But as to these items the amount that should be expended is entirely within the discretion of the fiscal court. Expenses for purposes such as these the fiscal court may or may not incur, as they are not indispensable to the conduct of the government of the county, although they may contribute very greatly to the convenience and comfort of the people of the county and add very largely to its material prosperity.

It will not be difficult for fiscal courts disposed to observe the constitutional limitations as we have described them to follow these rules, because the amount needed to defray the current or fixed charges of the county can be estimated at the beginning of each year with reasonable certainty based on the volume of such expenses for the preceding year, to which there should, of course, be added the amount of such other necessary expenses in the maintenance of public buildings and public institutions as the fiscal court sees proper to expend during the year; and the amount that can be realized from the income and revenue of the county can likewise be estimated with reasonable certainty based on the income and revenue of the preceding year. Possibly in some years fiscal courts acting in good faith and with the purpose not to violate the constitution, might create a debt that could not on account of some unexpected or unanticipated cause be paid out of the revenue of the year; but if a condition like this should arise, which under good management ought not to be often, the indebtedness remaining unpaid must be carried over and paid out of the next year. As said in the McCrocklin case, *supra*: "If, however, in good faith,

a county does, in anticipation of its proper revenue, create debts in excess of what it collects, this surplus debt must be carried as a debt to the next year, and succeeding years until paid, and must be taken account of as an indebtedness of that year and succeeding years, until paid, in exactly the same manner as if the carried-over debt was created in the year to which it was carried."

The limitations we have set down do not interfere with the right of the people at the polls to create indebtedness and authorize the imposition of taxes in excess of the amount authorized by section 157. This section merely imposes a limitation upon the taxing authorities of counties, cities, towns and taxing districts. It does not affect the right of the people to create such debts and authorize the levy of such taxes as they desire within the limitation of section 158, as was expressly decided in City of Winchester v. Nelson, 175 Ky. 63.

Section 157 of the constitution was intended to protect the people from the extravagance or recklessness of their officials in whom is lodged the power to levy taxes—such as fiscal courts, city councils and the like—and these taxing authorities have no jurisdiction or authority to create in any year an indebtedness that cannot be paid out of the income and revenue of that year after there has been deducted therefrom a sum sufficient to satisfy the necessary fixed or current expenses of the county; while section 158 is a limitation upon the power of the people themselves to create debts beyond the amounts fixed in this section. The people of the state who adopted the present constitution knew from much bitter experience how important it was to place fixed limitations on the right to create debts and impose taxes. They had suffered greatly from the want of these limitations in former constitutions and in many instances had been burdened with debts, the existence of which in 1891 furnished a present reason for putting limitations that could not be exceeded not only upon their public officials, but upon themselves.

It may be and is urged that a limitation such as we have construed the constitution to put on the power of fiscal courts to create debts will seriously embarrass fiscal courts in the prosecution of useful public improvements beneficial to the people of the counties. A sufficient answer to this is that the people themselves, when they desire to create an indebtedness that cannot be paid by the tax authorized to be levied under section 157, are

at full liberty to do so, and the people have no right to complain on account of a condition voluntarily imposed by themselves and which they have the privilege of removing by their votes at any time they see proper to do so.

It might here, however, be appropriately noticed that in the many cases that have come to this court involving the limitations upon the creation of debts and the increase of taxes that are found in sections 157 and 158 of the constitution, the effort has always been to evade the limitations of these sections, in opposition to the will of the people or at least without their consent. Every case that has come under our notice has been an attempt upon the part of some fiscal court, city council or other taxing authority to create debts against the county or other taxing district. or municipality exceeding the limitations of section 157, and this without getting at the polls the consent of the people.

Another question is whether Nelson county may estimate for the year 1917 as a part of its assets the state aid road fund that has been set apart to the county by the State Road Department? The facts concerning this question, as set out in the uncontroverted amended answer, are these: "The defendant, Nelson County Fiscal Court, duly made application to the Commissioner of Public Roads for the improvement of a large number of inter-county seat highways in said county, during the year 1917, which highways were and have been accepted and declared by the Department of Public Roads of Kentucky inter-county seat highways, and asked and requested said department to extend state aid on said highways to the extent of the apportionment due to said county from the state aid fund for said year 1917; that defendant, fiscal court, requested from said department more than fourteen thousand dollars for the purpose of the reconstruction of said inter-county seat highways in said county, and its application has been duly received and accepted by the said Commissioner of Highways of Kentucky, and defendant avers that it is ready to furnish plans and specifications for said road improvement and has taken all steps and complied with all conditions up to the making of said contract which under the law would enable it to receive and have from said state its apportionment of said fund which defendants aver is not less than fourteen thousand dollars, and which sum under the provisions of said law it is entitled to have

paid to it and. to receive from the state of Kentucky during the said year 1917 and which sum the state of Kentucky is able and willing to apportion to Nelson county upon the county paying a like amount, which it is willing to do; that under the law the said Commissioner of Highways of the state of Kentucky has no option to refuse to grant said aid, but same is a fund collected by the state of Kentucky which must be apportioned to the county of Nelson under the terms of said statute, and under the terms of said statute the fund which will be collectible during the year 1917 from the state of Kentucky will not be less than fourteen thousand dollars."

We do not think the averments of this pleading are sufficient to entitle the county to estimate as a part of its income the aid it will get from the state. It does not set out with sufficient fullness all the facts that would show with certainty the exact amount that the county will receive from the state aid fund, or that the State Road Department has set apart for Nelson county a specific sum, or that the county has shown itself entitled to a part of this state fund.

When, however, the State Road Department has set apart to a county its proportion of the state road fund, and the county has complied with all the requirements of the State Road Department that will entitle it to the fund so set apart for its benefit, then, and not until then, may the county estimate as a part of its income for the year its part of the state road fund. There are certain specific and essential requirements that each county must observe before it will certainly be entitled to receive from the state that part of the state road fund allotted to the county, or any part thereof. But when all of these requirements have been complied with on the part of the county as well as the State Road Department, and nothing remains to be done by the county to get its share of the fund except to complete the road to which the fund is allotted and the acceptance of the road by the State Road Department, we perceive no good reason why this state road fund should not be estimated as a part of the income of the county for the year, or why the county should not be allowed to treat this fund as a part of its assets.

As we understand the statute regulating this department and the rules adopted by the department, the state will pay to the county to aid in the construction of state

roads the sum set apart by the state for this purpose when the roads have been accepted by the department, if all the requirements of the statute and the rules of the department have been observed by the county and everything that the State Road Department requires the county to do to show itself entitled to this fund has been complied with. It might, of course, turn out that a state aid road constructed by the county would not be accepted by the State Road Department, and on account of this fact the county would not receive all or any part of the state road fund. But if all the other requirements of the department have been complied with by the county, the refusal of the State Road Department to accept the road must then be due to some failure on the part of the contractor to perform his contract and consequently there could be no liability on the part of the county to pay for the road. So that a county cannot under ordinary conditions, if all the requirements of the State Road Department have been observed, create a debt in the construction of state aid roads without receiving its part of the state road fund. A full discussion of this matter may be found in Mitchell v. Knox County Fiscal Court, 165 Ky. 543.

On a return of the case, the judgment in respect to this state road fund should be corrected so as to set out clearly and fully the conditions under which and when the county may estimate as a part of its income for this year the amount that it will receive from the state road fund.

In the former opinion it was directed that thirty-four thousand dollars should be deducted from the total of the indebtedness of the county, as this item of indebtedness was created in the purchase of turnpikes. But it appears from this record that fourteen thousand dollars of this indebtedness has been paid, and it is insisted by counsel for McCrocklin that in determining the indebtedness of the county only twenty thousand dollars in place of thirty-four thousand dollars should be computed as a liability.

In opposition to this view, counsel for the county insist that the thirty-four thousand dollars should be treated as a liability, as the fourteen thousand dollars was paid out of the bonds issued by the county, a history of which is set forth in the former opinion in this case, or, at any rate, that if these bonds had not been issued the fourteen thousand dollars could not have been paid.

We think, however, it is wholly immaterial out of what funds this fourteen thousand dollars was paid. It is agreed that it was paid and the indebtedness thereby reduced from thirty-four thousand to twenty thousand dollars, and we are unable to understand how the county can claim credit on account of an indebtedness that does not exist. When the fourteen thousand dollars was paid, that was an end to that much of the indebtedness, and therefore in stating the accounts of the county only twenty thousand and not thirty-four thousand dollars should be considered as a liability of the county on account of this turnpike debt.

Wherefore, the judgment on the original appeal is affirmed and on the cross-appeal it is reversed as to the item of fourteen thousand dollars.