## Miles v. United Oil Company.

(Decided July 1, 1924.)

### Appeal from Estill Circuit Court.

1. Pleading—Jurisdiction to Litigate Matter Determined in Prior Suit Cannot be Questioned by Demurrer where Petition Does Not Show Prior Suit.—Defendant under Civil Code of Practice, section 92, could not by special demurrer challenge jurisdiction of court on ground that same parties had litigated same cause of action in same court in a prior suit, where petition did not show that there had been prior suit.

2. Abatement and Revival—Special Demurrer Not Proper where Previous Litigation Disposed of.—Special demurrer challenging jurisdiction of court upon ground that same parties had theretofore litigated same cause of action in same court was ineffective where it showed upon its face that previous litigation had been disposed of and final judgment entered, under Civil Code of Practice, section 92.

3. Judgment—When Judgment Upon Demurrer Not a Bar.—Judgment upon a demurrer is not a bar to a second action between same parties on same cause of action, unless decision necessarily involves an adjudication on merits of case.

4. Appeal and Error—Demurrer Not Passed on, Not Considered.—Where record does not disclose what action, if any, was taken by lower court on a special demurrer, and it does not seem to have been passed on, it is not properly before reviewing court.

5. Appeal and Error—Record of Another Case Not Made Part of Record in Lower Court Not Considered.—Record of another case not made part of record in lower court cannot be considered on appeal, under authority of Court of Appeals, rule 7, or otherwise.

6. Mines and Minerals—Petition Held to State Cause of Action for Breach of Contract for Sale of Leases and Other Property.—Petition held to state cause of action for breach of contract for sale of oil and gas leases and other property by failing or refusing to warrant good title.

7. Contracts—Unilateral Offer Becomes Binding on Acceptance.—A unilateral offer becomes a binding and enforceable contract where accepted before revocation.

8. Pleading—Allegation that Offer Accepted Sufficient Statement of Ultimate Fact of Acceptance.—Allegation that offer was accepted within prescribed time was sufficient statement of ultimate fact of acceptance, and is not mere conclusion of pleader.

9. Mines and Minerals—Tender of Purchase Price for Leases Held Unnecessary.—Acceptance of offer to sell oil leases was not invalid because of failure to tender purchase price, where seller declined and refused to perform its part of contract after being notified that purchaser was ready, willing, and able to pay and offered to pay agreed consideration.

10. Mines and Minerals—Acceptance of Offer Held Not Counter Proposition.—That one given right to offer leases for sale became prospective purchaser by and with full knowledge and consent of seller, prior to date of acceptance of offer, in no way conflicted with terms of offer so as to be construed to be a counter proposition.

11. Mines and Minerals—Agreement to Warrant Title Made After Acceptance of Offer Supported by Consideration.—Agreement of seller of oil leases subsequent to acceptance of offer to warrant title was supported by ample consideration, such as purchaser's consent to waive immediate performance, to grant extension of time, furnish assistance in examination of title, and to accept guaranty of indemnity as to part of property in litigation.

12. Mines and Minerals—Law Implies Warranty of Title Upon Proposed Sale of Oil Lease and Plant.—Law implies warranty of title upon proposed sale and transfer of oil lease and leaseholds, oil in place, oil tanks, pipe lines, power plants, and machinery.

E. L. McDONALD, E. C. O'REAR and HAZELRIGG & HAZELRIGG, FRANKLIN, TALBOTT & CHAPMAN and RIDDELL & SHUMATE for appellant.

BEVERLEY R. JOUETT, JOHN A. NIEDING and CLARENCE MILLER and R. R. FRIEND for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Reversing.

Appellant, J. Fred Miles, as plaintiff below, instituted this action in the Estill circuit court to recover the sum of $712,500.00 as damages from appellee, United Oil Company, for the alleged breach of a contract which he

claimed they had entered into with him.  This is the plaintiff's second attempt to recover upon this claim.

Prior to the present action the plaintiff filed a suit in the Estill circuit court against the defendant in which he sought to recover for the same alleged breach of contract.  In that action a demurrer was sustained to the petition and amended petitions therein filed, and upon plaintiff's appeal to this court the action of the lower court in sustaining the demurrer was approved and the judgment affirmed.

The cause of action attempted to be set out at that time was based solely upon two letters written by the defendant to the plaintiff, and there was no allegation or claim in the petition that any part of the true contract between the parties had been omitted by oversight or otherwise from those two letters.  In addition to those letters plaintiff set out in full in a seventy-eight page petition a large number of other letters and telegrams, evidential in character, which passed between the parties subsequent to the original letters, and plaintiff pleaded these upon the assumption that they in themselves were proper and sufficient allegations of his performance and the defendant's breach of the contract.

Construing the petition as a whole and in the light of all the letters and telegrams it contained this court, in an opinion reported in 192 Ky. 542, held that the petition failed to state a cause of action for various reasons, which may be summarized, for the purposes of this opinion, as follows:

1.  No contract of sale was created by the two original letters, there being simply an agreement to make a transfer of leases.

2.  No purchaser was shown to have been found within the time limit specified in the letters, to-wit, 40 days.

3.  No purchase at the most was shown of other than mere leases, but even if it were it was not of the defendant corporation's physical properties but of the shares of stock of the defendant's stockholders.

4.  The subsequent extension of the time limit of the original contract as shown by the letters and telegrams was the act of the individual stockholders and not of the corporation, and therefore created a new contract for which the defendant corporation was not liable.

5. Since the contract called for the mere transfer of leases there was no implied warranty of title and there was no express warranty contained in the various letters and telegrams.

6. There being no warranty of title, either express or implied, defendant did not breach the contract by failing or refusing to give one upon the transfer of the leases.

Pursuant to the mandate of this court issued in accordance with that opinion the lower court dismissed the petition. Thereafter the plaintiff filed the action out of which this appeal arises.

In the petition in the instant case the plaintiff omits, as he has a right to do, any reference to the former case and to all the letters and telegrams, except the two original ones, and by proper allegations attempts, and we think successfully, to cure the defects which were fatal to the former action.

Upon the filing of the present petition the defendant interposed a special demurrer whereby it attempted to challenge the jurisdiction of the court upon the ground, as set out in the demurrer, that the same parties had theretofore litigated the same cause of action in the same court, and that demurrers to the petition and amended petitions therein had been sustained and a final judgment entered pursuant to the mandate of this court. Under no conceivable construction does this present any sort of defense to the action, or make the record in the former case a part of the record in this case.

The office of a special demurrer is specifically set out in section 92 of the Civil Code; it is limited in its application to the defects specified in that section, and those defects must appear on the face of the pleading attacked. L. & N. R. R. Co. v. Stewart, 163 Ky. 164; Puckett v. Jameson, Sheriff, 157 Ky. 172; Richardson v. L. & N. R. R. Co., 129 Ky. 449.

It is not claimed, nor can it be, that the present petition even remotely refers to any previous litigation between the parties or that it shows upon its face any of the facts or proceedings attempted to be set out in the special demurrer. The latter cannot raise objections to the jurisdiction by reciting facts not shown by the pleadings. L. & N. R. R. Co. v. Mitchell, 162 Ky. 253.

Moreover, the demurrer shows upon its face that the previous litigation therein referred to has been disposed

of, for it expressly states that a final judgment has been entered. and it is therefore not available since it is applicable only when the previous action upon which it is based is still pending. Civil Code, section 92; Citizens' National Bank of Danville v. Forman's Assignee, 111 Ky. 206.

It is unavailing for the further reason that the final judgment to which it refers was entered upon an order sustaining a demurrer to the petition, and this court has heretofore held in numerous cases that a judgment upon a demurrer is not a bar to a second action between the same parties on the same cause of action unless the decision on the demurrer necessarily involves an adjudication on the merits of the case, and no such claim is made here. Cain v. Union Central Life Insurance Co., 123 Ky. 59; Francis v. Wood, 81 Ky. 16; Woolley v. Louisville Banking Co., 81 Ky. 527; Thomas v. Bland, 91 Ky. 1; Maize v. Bowman, 93 Ky. 205; Randolph v. Snyder, 139 Ky. 159; Birch v. Funk, 2 Met. 544; Anno. Cases 1913A 541.

The record upon this appeal does not disclose what action, if any, was taken by the lower court upon this so-called special demurrer, and as it does not seem to have been passed on it is not properly before us. That it is without merit is apparently admitted by counsel, and we would not have discussed the subject at such length but for the fact that a large part of counsel's argument in brief is based upon matters appearing in the former record which do not appear in the present one, and because of the further fact that counsel has had the former record placed with the present one. It is evident that this has been done upon the basis of the facts set out in the special demurrer and under the supposed authority of rule VII of this court, but neither authorizes such procedure. But even if we were mistaken as to this and the former record were otherwise properly before us, it could not be considered upon this appeal since it was not made a part of the record in the lower court and was not before that court. Paducah, etc., Co. v. Albritton, 174 Ky. 270; Salyer, et al. v. Union Bank, et al., 149 Ky. 847. For the foregoing reasons the former record, together with such matters therein set out as have been omitted from the present record, cannot be and have not been considered upon this appeal.

In addition to the special demurrer defendant also filed a general demurrer to the petition and it was sustained, and it is from that action of the lower court that

this appeal is prosecuted. The sole question, therefore, upon this appeal is whether or not plaintiff's petition, in and of itself, and without any reference to or consideration of the record in any former action between the parties, states facts sufficient to constitute or support a cause of action. If the petition is sufficient, the action of the court in sustaining the demurrer was erroneous. This is the sole question to be determined, and the decision of this question must be governed entirely by the allegations of the petition itself. These allegations are so interwoven and so interdependent that we find it necessary to set out the petition at some length so that it may be seen that it properly states a cause of action and that defendant's complaints as to its sufficiency are not well founded.

The petition alleges that on and before May 15, 1917, the defendant represented to plaintiff that it owned oil and gas leases on some 1,280 acres of land in Estill county held by the lessors under good and sufficient title, and that it also owned a large quantity of personal and mixed property on said leaseholds consisting of oil in place, oil tanks, pipe lines, power plants, engines, pumps and other property used in connection with some 49 oil wells it had drilled on said leaseholds and from which it was producing oil in large quantities; that by writings dated May 15, 1917, and May 21, 1917, plaintiff was given the right to offer and negotiate the sale of the above mentioned property, but by mutual oversight and mistakes of the parties said property was not fully or specifically described in said writings, although during all of the subsequent dealings between the parties said property was treated and acknowledged by both parties as the property to be transferred by the defendant in the event of a consummation of a sale under the writings. Said writing of May 15, 1917, is as follows (that of May 21 is substantially the same and we will therefore not copy it):

"Cleveland, Ohio, May 15, 1917.

"Mr. J. Fred Miles,

Lexington, Ky.

"You are hereby authorized and empowered and we hereby give you the right to offer and negotiate the sale of our United Oil Company property, incorporation of Kentucky, comprising the following twelve hundred and eighty (1,280) acres of leases,

more or less, a copy of said leases hereto attached and made a part hereof, for the sum of one million five hundred thousand ($1,500,000.00) dollars, net to us. We further authorize you to bring any representative to our property to check up and gauge same, at your expense, and we will accept and make transfer of the property for the above consideration. This authorization to hold good and be binding on the above named corporation for forty (40) days from the date hereof.

"THE UNITED OIL CO., INC.
By C. J. Weideman, Treas."
(Certificate of acknowledgment.)

The petition alleges the plaintiff notified the defendant that he owned large undeveloped leaseholds near those of defendant, and desired to consolidate his property and that of defendant in one operation for their mutual advantage. Within a day or two after the May writings plaintiff likewise notified defendant he desired to negotiate a sale by himself becoming a purchaser in connection with others, and to this defendant agreed.

Within forty days of May 15, 1917, he found a group of purchasers, himself included, who were ready, willing and able to pay $1,500,000.00 net to defendant for said properties and to carry out and execute the terms and conditions of the agreements of May 15 and May 21, and to accept a transfer of the properties, and he notified defendant thereof and that they had accepted defendant's offer made by the plaintiff on behalf of the defendant. Plaintiff alleges that upon receipt of said notice and information defendant "in recognition of the obligation to guarantee to defendant (plaintiff) and associates a good, valid and sufficient title to said property and the quiet and peaceful possession of same," disclosed to plaintiff for the first time that there was a suit pending involving the title to one of the most valuable tracts of land involved in the negotiations and containing a number of wells, tanks, pumps, etc., but concealed the value and extent of the production. It was agreed between the parties that $180,000.00 should be withheld from the purchase price as indemnity to the purchaser in the event title to same could not be made. It was further agreed that plaintiff's attorney should assist defendant's attorney to examine the title to all the property so that defendant might promptly furnish such an abstract of title

as would disclose a good and sufficient title to what it had sold, and defendant represented and guaranteed that it had such title and would furnish it to the purchaser. Upon the examination of said title many serious defects were found therein which prevented the immediate completion of the sale and the transfer of the property and the payment of the purchase price.

Defendant being unable to furnish abstracts of title or to establish or show by the records that it had title to the leases and rights claimed by it, offered to deliver to plaintiff as an alleged compliance with its agreement to furnish good and sufficient title, certain affidavits apparently showing it had possessory title to its leased premises by reason of fifteen years' adverse possession held by its original lessors, which affidavits were insufficient to show title. Plaintiff ascertained defendant had neither good nor marketable title, there being numerous and serious defects therein, and could not convey a marketable title. As a matter of further delay and in order to facilitate the transfer of the properties defendant procured all of its stockholders to deposit their entire stock in escrow for delivery to plaintiff as soon as the sale and transaction could be completed by defendant's furnishing good and sufficient title, and said stockholders also agreed to the withholding of the $180,000.00 of the purchase price as aforesaid.

Plaintiff further alleges that by the writings of May 15 and 21st, by implication of law arising therefrom, by agreement that part of the purchase money might be withheld until good and sufficient title could be made and by its then and subsequent assurance that it had such title and would furnish abstracts of same, defendant did agree to make plaintiff and his associates a good, sufficient and merchantable title to all the properties it had agreed to transfer under the writing of May 15, 1917.

Plaintiff says the time for completion and delivery of the abstract of title and the payment of the purchase price was extended by mutual consent until August 31, 1917, at which time the defendant being unable to convey and transfer a merchantable title to the property, failed and refused to remove and clear up the objections and defects in such title, or to give satisfactory indemnity by reason of such defects and adverse claims and refused to make the transfer of the said properties pursuant to the agreement so to do.

Plaintiff says that during the weeks of delay he and his associates were ready, willing and able to pay and offered to pay the named consideration in cash upon getting good and sufficient title and demanded of defendant that it deliver good and merchantable title to said property, but defendant refused to furnish abstracts of such title or to remove the objections and clear up the defects pointed out therein by plaintiff, and was satisfied with its possessory title and would keep its property and do no more toward perfecting its title or furnishing or transferring such title or property to plaintiff or the purchasers found by him. Plaintiff then alleges that by reason of defendant's failure to transfer the property as required by the contract he was damaged in the sum of $712,500.00.

Accepting the allegations of the petition as true, as we must do in passing upon the demurrer, we are of the opinion that they cured the defects pointed out in the former opinion and summarized in the earlier part of this opinion, and therefore state a valid cause of action. It alleges specifically that the subject matter of the contract was the entire properties of the defendant, consisting not only of the leases mentioned in and made a part of the writings, but also of oil wells, oil in place, pumps, machinery and a vast amount of chattels, both real and personal, located on the leaseholds, which it is alleged were omitted from the writings by mutual oversight and mistake.

It charges that the defendant represented that it had good and sufficient title to these properties which it authorized plaintiff to sell in conjunction with property of his own. That within the prescribed time plaintiff notified defendant he had secured purchasers including himself and had accepted the defendant's offer, and they were ready, able and willing to pay the agreed purchase price and fully comply with their part of the contract upon the transfer of the properties to them. Thereupon the defendant informed the plaintiff of certain defects in the title to some of the properties and agreed to clear up these defects, and by mutual consent the time for the completion of the contract was extended. It is further charged that defendant was finally unable or unwilling to warrant the title to the properties to be sold and transferred in accordance with its agreement, and refused to do so and thereby breached the contract.

The sufficiency of the petition is challenged upon numerous grounds, many of which are matters of defense based upon facts that appear only in the record in the former action between the parties and not in the record now before us and, therefore, cannot be considered upon this appeal for the reasons heretofore given. Upon a consideration of the petition as a whole we fail to find any ground upon which the judgment sustaining the demurrer can be upheld. It is argued that the allegation that some of the properties involved were not fully described in the writing of May 15th cannot avail the plaintiff because that writing is a unilateral offer and therefore cannot be amplified or extended. While we do not concede the writing to be a mere unilateral offer under the circumstances set out in the petition, yet—even if it were—the principle attempted to be invoked by the defendant does not apply, since the offer was accepted before its revocation and thereby became a binding and enforceable contract.

But it is contended that the petition fails to show a valid acceptance. In support of this contention it is urged that the facts as to the acceptance are not pleaded, that no tender of payment is alleged, and that the acceptance as set out was not in the terms of the offer and therefore constituted a counter proposition. With this we cannot agree. Plaintiff alleges specifically that the offer was accepted within the prescribed time; this is a sufficient statement of the ultimate fact of acceptance and it is not a conclusion of the pleader as defendant's counsel contend. Nor is the acceptance invalid because of the failure to tender the purchase price. Under the circumstances a tender was not necessary, but even if it had been necessary, the defendant waived its right thereto by declining and refusing to perform its part of the contract after being notified that the plaintiff was ready, willing and able to pay and had, in fact, offered to pay the agreed consideration. Nor is there any merit in the contention that the acceptance was not in the terms of the offer either because the plaintiff himself became a purchaser or because of his demand for a warranty of good, merchantable titles. Plaintiff became a prospective purchaser by and with the full knowledge and consent of the defendant long prior to the date of the acceptance and acted in that capacity throughout all of the transaction. This in no way conflicted with the terms of the original offer and in no sense can be construed to be a counter

proposition. Nor can plaintiff's demand for a warranty of good, merchantable titles be so construed.

The petition definitely alleges the defendant expressly agreed to furnish good, merchantable titles to all of the properties and to warrant same, and that being true it follows that the plaintiff was but acting within the terms of the original contract itself in demanding such warranty. He had the right to demand it under the contract even though there may have actually been no defect in the title to any of the property involved in the transaction. While the petition is not as definite or clear upon this subject as it might have been and does not appear to allege an express agreement as to warranty prior to the date of the acceptance, it does definitely allege such an agreement subsequent to the acceptance; and that agreement is supported by ample consideration, such as the plaintiff's consent to waive the defendant's immediate performance of the contract, to grant an extension of time, to furnish assistance in the examination of all the titles and to accept a guaranty of indemnity as to part of the property then in litigation.

But even if there was no express warranty and none had been alleged, nevertheless plaintiff was within his rights in demanding it, since the law clearly implies a warranty of title upon the proposed sale and transfer of such property as that described in the contract and under the circumstances set out in the petition. Defendant, as authority for its contention that there was no implied warranty under the contract, relies upon the opinion of this court in the former action between the parties. That opinion, however, does not sustain its contention. The facts set out in the petition in that action showed that the only contract between the parties consisted of the defendant's agreement to transfer or assign to the plaintiff mere leases only, and we simply held that by agreeing merely to transfer the leases the defendant only agreed to place the plaintiff in the same relationship toward the original lessor as that occupied by the defendant and no more, and hence there was no implied warranty of title. But the facts now before us present an entirely different situation. It is alleged that the property to be sold and transferred consisted not only of leases but also of leaseholds and a vast amount of oil in place, oil tanks, pipe lines, power plants and machinery used in connection with some forty-nine producing wells on the leasehold and all of the value of many thousands of dollars. That

the proposed sale of such property carries with it an implied warranty of title cannot be seriously questioned. It follows, therefore, that under the contract as set out in the present petition the plaintiff had a legal right to demand that the property he had agreed to purchase should be delivered to him with a warranty of good, merchantable titles, and if the defendant failed or refused to furnish such titles it thereby breached the contract and is responsible in damages to the plaintiff.

Other alleged defects in the petition are urged at length by counsel, but, since they are largely matters of defense and are not grounds for a demurrer, we have not found it necessary to decide them upon this appeal. Having concluded that the petition states a cause of action it follows that the court erred in sustaining the demurrer to the petition. Wherefore, the judgment is reversed.