## King v. Christian County Board of Education.

(Decided May 3, 1929.)

ALFRED HOLMAN for appellant.

JOHN C. DUFFY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

The county board of education of Christian county that was in office in 1916, and from thence to and including 1923, became indebted from year to year in an aggre-

gate sum at the end of the last one of approximately $150,000. Its successor that took office in 1924 reduced that debt to the sum of $61,000, which was largely, if not entirely evidenced by notes bearing 6 per cent. interest. The appellee and defendant below, being the board in office on February 4, 1929, passed a resolution reciting the indebtedness, the payments thereon, and the balance due, and stated therein that the available revenues to be obtained for this year (1929) it would be impossible to pay any more on the balance due than $11,000, and to undertake to pay a greater sum than that would materially retard the maintenance of the common public schools of the county. Its finding therefore resolved that it would issue its bonds for $50,000 in denominations of $1,000 each running through a designated period of time and bearing a reduced rate of interest from what it was paying on the notes representing the unpaid balance.

Immediately thereafter, and before any bonds were issued pursuant to that resolution, appellant and plaintiff below, as a citizen and taxpayer suing for himself and others similarly situated, filed this equity action in the Christian circuit court against defendant, the present county board of education of the county, in which he prayed, first: "That defendant be put upon its proof whereby the validity of said $61,000 of floating indebtedness, or in any event of $50,000.00 thereof may be estimated." A second prayer was that: "If the validity of such indebtedness is so established to the satisfaction of this honorable court, that it be allowed to be evidenced only in its present form," and that defendant be restrained from issuing the bonds it contemplated, and from paying the indebtedness in any other way than "at such time or times, no matter when, as the defendant finds itself in funds available to liquidate the same." A copy of defendant's resolution was filed with the petition as an exhibit. A demurrer was filed to the petition, and without waiving it defendant filed its answer in which it admitted, not seriatim but in general language, all of the allegations of the petition and further stated, "That defendant is prepared to prove the validity of the indebtedness referred to in its Order or Resolution of February 4, 1929," and "that said $50,000.00 of floating indebtedness intended to be funded, being shown to be valid and a subsisting obligation of this board, is capable of being funded into bonds by virtue of section 158 of

the Constitution of Kentucky," and that it be permitted to do so "and that it be authorized to proceed as in the Order or Resolution of February 4, 1929." It thus sought counter relief without so styling its pleading. A stipulation signed by attorneys for each party was filed, in which the evidences of the floating indebtedness, the duplicate assessments, delinquent lists, exonerations, etc., for each of the years of the period in which the debt was created, are set out, the purpose for which, we conclude, was to show that if such exonerations, delinquencies, etc., had not occurred, the revenues of defendant for each of those years would have been sufficient to have met the annual expenses without the incurring of any indebtedness. The cause was then submitted to the court, and it sustained the demurrer filed to the petition and denied the injunction prayed for, but did not dismiss the petition. It furthermore adjudged that the floating indebtedness of defendant, created as above outlined, "is now a valid, binding and subsisting obligation of said board," and that it could lawfully fund it by issuing the contemplated bonds, and from that judgment plaintiff prosecutes this appeal.

The action evidently was and is a friendly one, since it exhibits a greater degree of harmony between clients and counsel than most any other that has come under our observation, and plaintiff, though a resident citizen of Christian county, obtained counsel residing in Cincinnati, Ohio, whom we glean from the record is also counsel of the purchasers of the contemplated bonds, to file his petition. There is nothing objectionable to such practice, and we mention it only for the purpose of showing the delicacy with which the real question in the cause was handled. The petition not having been dismissed by the judgment appealed from, it is doubtful if we have jurisdiction to determine its sufficiency, since the mere sustaining of a demurrer to a pleading without further action by the court is not a final judgment from which an appeal to this court may be taken. Bruch v. Glow Electric Co., 189 Ky. 813, 225 S. W. 1062; Autry v. Autry, 191 Ky. 42, 229 S. W. 79.; and Shaw v. Morrison, 193 Ky. 751, 237 S. W. 372. But, inasmuch as the nature of the proceeding partakes largely of the elements of a declaratory judgment action, and to preserve the harmony that has prevailed throughout the pendency of the cause, we have

concluded to waive that question of practice and to determine the sufficiency of the petition.

If it had gone to the extent of expressly averring that the involved floating indebtedness was illegal, but without stating the facts establishing such illegality, it then would have been insufficient, because averring only conclusions and not facts. Baker v. Rockcastle County Court, 225 Ky. 99, 7 S. W. (2d) 846; Pulaski County v. Richardson, Treasurer, 225 Ky. 556, 9 S. W. (2d) 523; Rowland v. City of Paris, 227 Ky. 570, 13 S. W. (2d) 791; and other cases referred to in those opinions. But, as we have seen, the petition in this case did not in terms make the general allegation that the involved floating indebtedness was invalid when created. On the contrary, the only statement in the petition bearing upon that question is that the board that created it "had no authority in law so to do." The copy of the resolution of the board filed as an exhibit with the petition did state that such floating indebtedness, as each installment was created, was "legally contracted by the said county board," and which is also only the conclusion of the defendant, board, when it passed that resolution. However, if what defendant stated in its resolution of February 4, 1929, was competent evidence of the facts contained in the statement inserted in the resolution, then under a well-established rule of pleading, it could not aid the defective petition in this case, since an exhibit may not add to or supply deficiencies in a pleading to which it is filed, but may detract therefrom. It is therefore clear that the petition was wholly insufficient and the demurrer filed thereto was properly sustained.

The facts necessary to be averred in a pleading seeking judicial approval of the creation of a municipal or quasi municipal debt should specifically point out that the indebtedness, or each annual installment thereof when created, did not exceed in any year "the income and revenue provided for such year," or that a legally called election had been held within the taxing unit and the incurred indebtedness was within the right of the voters to authorize at such an election, and which had been done. It is not pretended that any election was held in this case to authorize the issuing of the bonds of the present defendant, or to authorize its predecessors to create the annual installments of the present aggregate floating indebtedness proposed to be funded by the issual of the bonds. So

that, defendant in any event should have averred in its answer the necessary facts to clearly point out that its predecessors, during the years the floating debt was created did not expend in doing so a total sum in excess of the maximum amount of revenue that could have been produced for its use in that year, either by ad valorem taxation, or otherwise. In order to effectually do that it was incumbent upon defendant to point out, not only the specific aliquot part of the total floating indebtedness that its predecessors created in each of the years mentioned, but also to allege the amount of available revenue to the school district of the county represented by the board, and which latter, in turn, required an averment of the sources of revenue of the board for each particular year and the fairly estimated amount thereof, to be calculated on the ad valorem taxable property at the prevailing rate of taxation for the purpose, and also other legal sources of revenue, if any. McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494; Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323; City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040; and other cases referred to in those opinions. The last-cited cases, and many others following them, also hold that any deficit carried over from one year to another should be taken into calculation in measuring the amount to be expended, or adidtional debt to be created in the following year or years to which the deficit or accumulated deficit was carried, and so on as long as any deficit indebtedness exists. As such deficits are created and carried over the amount of allowed expenditures are reduced, and a pleading in such a case (and to which the present one belongs) should point out, not only the facts hereinbefore referred to, but the further one that the newly created deficit for each succeeding year was permissible when created after taking into the calculation the carried-over indebtedness from previous years, and that each annual installment so carried over was itself valid as measured by the foregoing facts. Conversely, one attacking the validity of such indebtedness should negative such facts with equal particularity so as to enable the court to determine for itself whether or not the debt was or is invalid. Nothing of the kind was attempted in this case in any pleading or exhibit filed in the cause; but if the essential ones to sustain the petition had

been contained in the exhibit filed therewith they could not be considered for the reasons hereinbefore stated.

Under the harmony course that we have adopted herein, we will pursue the discussion upon the theory that the court dismissed the petition. In that event the dismissal could not be treated as an *adjudication* of the *validity* of the involved indebtedness so as to permit it to be funded by defendant through the issual of the proposed bonds. The universally accepted rule within this and other jurisdictions, and indorsed by authoritative text-writers, is that the sustaining of a demurrer to, and the dismissal of, a pleading because of its *omitting* to state essential allegations, is not a bar to subsequent proceeding seeking the same relief, even though it be between the same parties. Louisville & N. Railroad Co. v. Commonwealth, 181 Ky. 193, 204 S. W. 94; Baker v. McDonald, 185 Ky. 470, 215 S. W. 292; Coleman-Clark Grocery Co. v. Covington Bros. & Co., 186 Ky. 736, 217 S. W. 889; Miles v. United Oil Co., 204 Ky. 345, 264 S. W. 761; Towles v. Campbell, 215 Ky. 34, 284 S. W. 418; Farmers' Bank of White Plains v. Bass, 218 Ky. 813, 292 S. W. 489; Robenson v. Yann, 224 Ky. 56, 5 S. W. (2d) 271; and numerous other cases found in those opinions.

In the Bass case referred to, the defects in the petition were exactly the same as in this case, i. e., the pleading of conclusions instead of facts. However, the rule does not prevent the conclusiveness of the judgment, or preclude its res judicata effect, where all essential facts are well pleaded, but the court nevertheless adjudged that they were insufficient to authorize the relief sought. In that case the judgment is as binding and conclusive as if rendered upon a full hearing upon the facts. Following that thoroughly settled rule, the dismissal of this petition (if it had been done), and the dismissing of petitions in similar actions for similar relief because of defective statements in the petition or omitted essential ones therefrom, would not have the effect of adjudging the validity of the contested indebtedness, nor would it bar a subsequent action seeking the same relief.

It will be seen, as hereinbefore observed, that the answer in this case partook somewhat of the nature of a counterclaim or cross-petition (though not styled as such), since it prayed for an affirmative adjudication declaring that portion of the floating debt that defendant proposed to fund by issuing its bonds as valid, and which

was an essential prerequisite to its right to do so. We have seen that, if its answer could be treated as one seeking cross-relief, the same defects existed in it that we have hereinbefore pointed out with reference to the petition, i. e., that it alleged only conclusions and not facts. So that, the entire record presents to the court no fact upon which a judgment could be based either the one way or the other, i. e., that the floating indebtedness was either valid or invalid, and we know of no rule of practice that would authorize a court to pronounce its affirmative judgment, necessarily based upon a finding of facts, under such conditions of the pleading. If done, without some sort of manifestation of the facts, then the judgment would be without anything upon which to rest and, consequently, would be wholly unauthorized. We so held in the cases of Ahrens v. City of Louisville, 186 Ky. 579, 217 S. W. 907, and Rowland v. City of Paris, 227 Ky. 570, 13 S. W. (2d) 791.

The validity of an ordinance of the city of Louisville, as a foundation for the creation of the proposed indebtedness of the city, was involved in the Ahrens case, i. e., whether the ordinance had received the required publication to render it valid. The facts with reference thereto were not clearly stated in the pleading, and the opinion said: "The allegations are indefinite and uncertain, so much so that we are unwilling to pass upon this phase of the case on the present state of the record." And, although the demurrer to the petition was sustained, we declined to expressly adjudge the validity of the indebtedness, saying: "We are fully cognizant of the importance of the question at issue, the security of the purchaser's investment, the maintenance of the city's good name, the imperative need and demand for extension of the city's sewerage system, and the interest of the voter and taxpayer in incurring an indebtedness of two million dollars ($2,000,000.00), all of which convinces us that in affirming the judgment we should determine *merely* the sufficiency of the petition *and not the validity of the bonds.*" (Our emphasis.)

The Rowland case was very similar to the instant one involving the same legal question based upon an analogous state of facts. The petition therein, seeking to enjoin the issuing of funding bonds for an accumulated floating indebtedness of the city of Paris, Ky., alleged

only conclusions which both the trial court and this one held were insufficient and sustained the demurrer filed thereto. But we expressly declined to pass upon the validity of the city's floating indebtedness that it sought to fund with its bonds, because the record did not present facts upon which such an adjudication could be predicated, and in doing so we said: "We do not mean to hold that the bonds are valid because we do not know. The facts alleged in the petition are not sufficient to enable a court to determine that question. The petition contains allegations which show that the appellant thought the old indebtedness was valid (exactly the same in this case), and, if it was his purpose in making the allegations to show that the old indebtedness was valid, then he was not in any position to obtain an injunction to prevent the issuing of the bonds."

The whole court considered that case, and the conclusions of the opinion were those of each member of the court; there being no dissent. Its soundness cannot be successfully attacked and we adhere to what was therein said. We therefore conclude that there was no pleading in this case to authorize that part of the judgment holding that, "the indebtedness intended to be funded was lawfully contracted by the Christian County Board of Education and is now a valid, binding and subsisting obligation of the said board," and the learned trial judge erred in doing so.

To that extent the judgment is reversed with directions to expunge therefrom such unauthorized part, but in all other respects it is affirmed.

Whole court sitting, except Judge Clay, who was absent.