**Mark ARSENAULT; Rosemarie Arsenault, Plaintiffs–Appellants,**

v.

**PNC MORTGAGE CORP., Defendant–Appellee.**

No. 00–6561.

United States Court of Appeals, Sixth Circuit.

April 1, 2002.

Before MOORE, COLE, and FARRIS,* Circuit Judges.

## OPINION

MOORE, Circuit Judge.

This case involves a mailed solicitation by Defendant–Appellee PNC Mortgage Corp. ("PNC Mortgage") to refinance the residential mortgages of a pre-approved group of its existing customers, including Plaintiffs–Appellants Mark Arsenault ("Arsenault") and his wife Rosemarie ("Arsenaults"). Although the Arsenaults contend that this letter contained an express and definite offer to refinance their mortgage at a stated interest rate, the district court found that the interest rate was not locked in and granted summary judgment in favor of PNC Mortgage. We AFFIRM the district court's decision.

I

When the Arsenaults bought their home in Crestwood, Kentucky, in May 1993, they financed the purchase through a thirty-year mortgage from the Bank of Louisville, which carried a fixed interest rate of 7.625%. The Bank of Louisville later sold the Arsenaults' mortgage to PNC Mortgage.

As interest rates began to fall in 1998, inducing customers to refinance their mortgages with competitors that extended lower rates, PNC Mortgage decided to present "a special refinance opportunity to [its most valuable] customers." Joint Appendix ("J.A.") at 195. On or about October 1, 1998, the Arsenaults received from PNC Mortgage a form letter dated September 30, 1998, that read as follows:

Interest rates are lower than they have been in years, providing you with an opportunity to lower the interest rate on your home loan and reduce your monthly payments. In fact, a review of your loan reveals that, based on your current balance of $101,778.48, you could reduce your monthly payment by $111.30 if you refinance at today's rate of 6.625%.

To help you take advantage of this, we are pleased to offer you a pre-approved

---

* The Honorable Jerome Farris, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

refinance of your existing PNC Mortgage home loan. And because you are a preferred PNC Mortgage customer, we have dramatically reduced our fees and eliminated many standard documentation requirements, making it faster and easier for you to refinance than ever before....

Because of your preferred status, PNC Mortgage will charge only a $300 application fee. All other PNC Mortgage fees have been waived. In addition to the application fee, other customary closing costs, such as local title charges, which vary by state and county, and prepaid interest will be charged; escrow deposits may also be required. You may have the option of financing some or all of these costs into your new loan balance to further reduce or eliminate your out-of-pocket costs.

To take advantage of this special offer, call us toll free at (800) 829–9330, Monday through Friday, 7:00 a.m.—7:00 p.m., CT. Please have your loan number available when you call. Or you can complete the attached form and fax it to us at (847) 549–3060 and one of our mortgage consultants will contact you within 48 hours.

Thank you for choosing PNC Mortgage for your home financing needs. We look forward to working with you to ensure that you receive maximum benefit from today's low interest rates.

J.A. at 192 (internal footnotes omitted). On the back of the letter were certain caveats, which we will discuss later.

Drawn by an interest rate a full percentage point less than his current rate, Arsenault called PNC Mortgage to refinance his mortgage on the same day that he received the letter.[1] After giving the representative his contact and loan information, Arsenault was told that a loan officer would call him within forty-eight hours. This phone call never came. Arsenault then began to call PNC Mortgage repeatedly, receiving a busy signal every time.

On October 13, 1998, a frustrated Arsenault called the PNC Mortgage office in Louisville, Kentucky, and was transferred to Linda Wilcox ("Wilcox"), a loan officer who confirmed on the basis of a company memorandum that the pre-approved refinance opportunity was still available. However, Wilcox offered Arsenault an interest rate higher than the 6.625% rate quoted in the solicitation letter. Determined to get the stated interest rate of 6.625%, Arsenault immediately wrote and faxed a letter to Michael W. Hall ("Hall"), the PNC Mortgage vice president who had signed the solicitation letter, detailing his unsuccessful attempts to refinance his mortgage. He also completed and faxed the tear-off response form.

On October 21, 1998, Wilcox called Arsenault and informed him that she could not confirm in writing whether the offer in the solicitation letter was still valid. Later that day, Hall called Arsenault to explain that the letter had used a 6.625% interest rate only to provide an example of typical or potential savings, not to extend an actual offer. Hall then offered Arsenault the higher interest rate of 6.75% that was available that day. He also offered to cut the Arsenaults' refinancing fees in half. Arsenault rejected this offer and contacted his attorney.

On December 18, 1998, the Arsenaults filed in Kentucky state court a complaint on behalf of themselves and all others similarly situated, alleging (1) breach of contract, (2) fraudulent misrepresentation,

---

1. Arsenault recalled receiving the solicitation letter on October 1, 1998. PNC Mortgage, however, alleges that the letter was not mailed until October 2, 1998.

and (3) violations of the Kentucky Consumer Protection Act ("KCPA"), KY.REV. STAT.ANN. §§ 367.110–367.310 (Banks–Baldwin West 1983 & Supp.2000), and similar statutes in other states. PNC Mortgage removed the case to federal court. On July 9, 1999, the Arsenaults filed an amended complaint and moved for class certification. The district court declined to rule on this motion but gave leave to reinstate it after the resolution of dispositive motions. On June 20, 2000, PNC Mortgage filed a motion for summary judgment, which the district court granted on November 3, 2000. This timely appeal followed.

## II

We review de novo a district court's grant of summary judgment. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir.2002). Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). "[W]e construe the evidence and draw all reasonable inferences [from the underlying facts] in the light most favorable to the nonmoving party." *Meyers v. IRS*, 196 F.3d 622, 624 (6th Cir.1999). However, if "the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party," we will affirm the grant of summary judgment. *Id.* (quoting *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995)).

## A

Following established principles of contract law, Kentucky courts require an offer and acceptance for a contract to be binding and enforceable. *See Miles v. United Oil Co.*, 204 Ky. 345, 264 S.W. 761, 765 (1924).

An offer has been defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981). It is further settled under Kentucky law that an offer must contain all material terms:

> A proposition or offer made [between persons not in personal contact with each other] must contain the essential and material terms of the proposed contract, and the offeree must agree thereto so that the obligations of the one and the counter obligations of the other will be mutually binding, which is but a statement of the fundamental rule underlying all contracts. Hence, to complete a contract so negotiated the proposer or offerer must state expressly or by necessary implication all the terms of his contract in his offer, and the other party must accept them as made, and in most instances he should communicate his acceptance to the other party before the negotiations assume the obligatory force of a contract.

*Hopkins v. Phoenix Fire Ins. Co.*, 200 Ky. 365, 254 S.W. 1041, 1042 (1923); *see also Cinelli v. Ward*, 997 S.W.2d 474, 477 (Ky. Ct.App.1998). "The construction as well as the meaning and legal effect of a written instrument, however compiled, is a matter of law for the court." *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992).

In this case, the Arsenaults argue that PNC Mortgage's solicitation letter contained a firm offer to refinance their mortgage at an interest rate of 6.625%. As the district court observed, however, the letter "only speaks hypothetically" about customers' potential to lower the interest rate on their mortgage. J.A. at 38. The dated letter also refers to "today's rate of

6.625%" and contains the following caveats: (1) that a 6.625% rate would result in the proffered "[e]xample of typical repayment terms," (2) that the 6.625% rate was "based on interest rates available at the time of offer," and (3) that "[p]rices and programs [were] subject to change without notice." J.A. at 192–93. PNC Mortgage appears to have determined interest rates on a daily basis. Therefore, although an interest rate of 6.625% may have been offered to customers who applied to refinance their mortgages on September 30, 1998, PNC Mortgage did not necessarily offer the same rate on the later date when Arsenault called.

■ Although the Arsenaults contend that this factual dispute should be submitted to the jury, we hold that the district court did not err in granting a summary judgment to PNC Mortgage, because the solicitation letter cannot be interpreted as extending a firm offer that contained the essential and material terms of the proposed refinancing of the Arsenaults' mortgage. The Arsenaults correctly note that PNC Mortgage procedures required customers to "refinance into a loan of the same type and term as the current loan." J.A. at 199. Therefore, the refinanced mortgage would have carried a fixed interest rate for a thirty-year term. However, the terms still missing from the letter include not only the interest rate but also the principal balance and the financing of "customary closing costs, such as local title charges, . . . pre-paid interest," and escrow deposits. J.A. at 192. Although the Arsenaults maintain that the letter offered to refinance their then-current balance of $101,778.48, the example on the back of the letter is based on a principal balance of $100,000. In other words, the language in the letter is in no way definite. Finally, the letter gave the Arsenaults the option to finance closing costs into the new loan balance, leaving yet another term open.

The Arsenaults essentially seem to believe that the solicitation letter offered them an option contract. During his deposition, Arsenault testified that he would have felt entitled to a lower interest rate if the rate was below 6.625% when he called PNC Mortgage, "because [customers] can shop around and get the lowest rate that [they] can." J.A. at 295. Such a contract, however, would have lacked mutuality and thus been invalid. As recognized by the then-highest court in Kentucky:

> [T]he basic problem is one of reciprocal considerations. An option contract is binding and enforceable against the person giving the option if the other party has furnished a quid pro quo. This may consist of performing services or incurring obligations which constitute either a detriment to the party granted the option or a benefit to the party giving it.

*Ligon v. Parr*, 471 S.W.2d 1, 4 (Ky.1971). It is undisputed that the Arsenaults did not furnish consideration to PNC Mortgage; indeed, they never filled out an application or paid the $300 application fee. A promise by PNC Mortgage to offer an interest rate no higher than 6.625% would have had value in 1998, when rates varied by as much as three-fourths of a percentage point. Although the Arsenaults did not receive the interest rate that they thought they would, they were in no way obligated to incur this detriment. Therefore, any option against PNC Mortgage was neither binding nor enforceable.

B

■ The KCPA provides a cause of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a

result of" an unlawful act in the conduct of trade or commerce. KY.REV.STAT.ANN. § 367.220(1). Because the parties did not enter into a binding contract, the Arsenaults did not purchase any service from PNC Mortgage. *Cf. Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988) (holding "that the purchase of an insurance policy is a purchase of a 'service' intended to be covered by the [KCPA]"). Therefore, we hold that the district court did not err in granting summary judgment to PNC Mortgage on this claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.