## Hopkins, et al. v. Phoenix Fire Insurance Company.

(Decided October 5, 1923.)

### Appeal from Boyd Circuit Court.

1. Contracts—Offer Must Contain Material Terms, and Acceptance Must be Communicated.—As regards contracts between persons not in personal contact with each other, a proposition or offer made must contain the essential and material terms of the proposed contract and the offeree must agree thereto, so that the obligations of the one and the counterobligations of the other will be mutually binding, and the acceptance must be communicated to the offerer

2. Contracts—Acceptance by Performance of Act by Offeree.—If an offer consists merely of a proposition for the offeree to do some specified act, the mere doing of that act by the latter will of itself complete the contract, so as to bind the one who made the offer without communicating the performance of the act by the offeree.

3. Insurance—Binding Contract for Fire Insurance Held Not Entered Into.—Where plaintiffs applied to local insurance broker, who wrote to another representing several fire insurance companies, and the latter wrote a "binder" or direction for his stenographer to prepare a policy in the defendant company, insuring the property for a certain amount for a certain period in consideration of a certain premium, there was no binding contract; plaintiffs having designated no company, and the acceptance of plaintiffs' offer not having been communicated before a fire occurred, and plaintiffs not being bound to accept the policy indicated by the binder

4. Contracts—Contracts Must be Mutually Binding.—Insurance contracts, as well as all others, must be mutually binding, and if

not so on one of the parties, it is also of no binding force as against the other.

5. Insurance—Agent Cannot Bind Principal by Attempting to Insure Property Already Destroyed.—A fire insurance agent has no authority to bind his principal by attempting to insure property already destroyed.

6. Principal and Agent—Principal Not Bound by Unauthorized and Fraudulent Acts of Agent.—The principal is not bound by the unauthorized and fraudulent acts of his agent, which are participated in by the other party to the contract.

7. Insurance—Agent Not Authorized to Ratify Imperfect Contract After Destruction of Property.—The filling in and delivery of a policy by a fire insurance agent on property known to be already destroyed cannot be treated as a ratification of a prior imperfect contract to insure; ratification by the agent after knowledge of the fire being unauthorized.

HAZELRIGG & HAZELRIGG, JOHN C. HOPKINS and GEORGE B. MARTIN for appellants.

F. M. DRAKE, BRUCE, BULLITT & GORDON and R. T. CALDWELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellants and plaintiffs below, J. C. Hopkins, et al., as the only heirs of their deceased father, F. A. Hopkins, inherited a two-story brick business house located in the city of Prestonsburg. They desired to insure it and its fixtures in the sum of $5,000.00, and applied therefor to J. M. Davidson, a local insurance broker but who did not represent the defendant, appellee, Phoenix Fire Insurance Company of Hartford, Connecticut, nor any other company so far as the record discloses. On the day on which application was made to him for insurance (Saturday, April 24, 1920), he wrote a letter addressed to Paul H. Eastham, who conducted a general fire insurance agency at Catlettsburg, some hundred miles of more from Prestonsburg, and he received the letter on the next day, which was Sunday. He opened it in his office and wrote what is termed in the record and may be considered as a "binder," and which contained in substance a direction for his stenographer to prepare a policy in the defendant company insuring the property in the sum of $5,000.00 for a period of three years from April 24, 1920, in consideration of a premium of $247.50. About 8 a. m. on the following Monday the stenographer prepared a policy in accordance with the directions or

"binder" and mailed it to plaintiffs, which they received and sent a check for the premium, which was never cashed and afterwards returned. At five o'clock on the same Monday morning the property was destroyed by fire and was not in existence at the time the stenographer filled in and mailed the policy. The defendant declined to pay the amount of the policy and this suit was filed to recover it. The petition as amended, set out the facts as above briefly recited and the court sustained defendant's demurrer thereto and dismissed the petition upon plaintiffs' refusing to plead further, and to reverse that judgment they prosecute this appeal.

The record does not disclose the ground upon which the court sustained the demurrer, but learned counsel for plaintiffs in their brief devote themselves principally to a discussion of the legal effect of the action of the defendant's agent in executing the "binder" or the direction to his stenographer on Sunday and her ratification of it on the following Monday by executing the policy after, as alleged in the petition, she had knowledge of the fire. It is contended by them that although a contract forbidden to be executed on Sunday is void, yet if all of the acts done and performed on Sunday were those of the defendant only, the plaintiff having performed all of his negotiations and made all of his promises on another day, the contract may be enforced by the latter; and, further, that although the "binder" in this instance was made on Sunday and for that reason might be considered as void, yet the act of writing and mailing the policy on Monday thereafter was a ratification of the void act performed on Sunday and made the insurance contract obligatory on defendant. Defendant's learned counsel joins issue with those contentions, and counsel for both parties display much learning and research in the discussion of the effect of Sunday contracts, their ratification, etc., but because of the conclusion we have reached concerning another defense interposed by defendant's counsel, we deem it unnecessary to discuss or determine the validity or invalidity of the Sunday transaction, since we are convinced that there was never any binding contract, either oral or written, entered into between the parties.

The law relating to the execution of contracts between persons not in personal contact with each other, through transmitted propositions by the offerer, and their accept-

ance as made by the offeree, and *communicating* the acceptance to the proposer, has been extensively dealt with by text writers and courts and much has been written and said with reference thereto. We can do no more in this opinion than to refer to some settled principles which we think are determinative of this case. A proposition or offer made in the manner indicated must contain the essential and material terms of the proposed contract and the offeree must agree thereto so that the obligations of the one and the counter obligations of the other will be mutually binding, which is but a statement of the fundamental rule underlying all contracts. Hence, to complete a contract so negotiated the proposer or offerer must state expressly or by necessary implication, all the terms of his contract in his offer and the other party must accept them as made and in most instances he should *communicate* his acceptance to the other party before the negotiations assume the obligatory force of a contract. There is a rule, however, which is accepted by a majority of the courts, to the effect that if the offer consists merely of a proposition for the offeree to do some act specified in the offer, the mere doing of that act by the latter will of itself complete the contract so as to bind the one who made the offer without communicating the performance of the act by the offeree. An illustration of such a contract is where a reward is offered for the arrest and apprehension of a criminal and some one accepts the offer by making the arrest. In that case the obligation of the offerer to pay the reward attaches at once without any notification to him that the arrest has been made. But an analysis of that class of contracts will demonstrate that, at least in the great majority of instances, they are held as so completed because the doing of the act by the offeree *ipso facto* performs his obligations thereunder.

We have no such case here and the negotiations between the parties, and relied on by plaintiffs as constituting the contract, can by no means be brought within that exception to the general rule. Some of the many cases and authorities asserting and applying the general rule, as above outlined, are: 13 C. J. 284; 6 R. C. L. 606 (section 29); Elliott on Contracts, vol. 1, sections 43, 88 and 90; Page on Contracts, vol. 1, section 152; Springfield Fire and Marine Ins. Co. v. Snowden, 173 Ky. 664; Ky. Portland Cement Co. v. Steckel, 164 Ky. 420; N. Y. Life Ins. Co. v. Levy's Admr., 122 Ky. 457; Mississippi Valley

Fire Ins. Co. v. Neyland, 9 Bush 430; Davies Lumber Co. v. Insurance Companies, 94 Wis. 472, 69 N. W. 156; New v. Germania Fire Ins. Co., 85 N. E. (Ind.) 703; Brown v. North River Ins. Co., 80 Southern R. (La.) 674, and Allen v. Mass. Mutual Accident Ins. Co., 44 N. E. (Mass.) 1053.

In stating the general rule, which the cited cases adopt and approve, the text in the citation of R. C. L. says: "To constitute acceptance of such an offer there must be an expression of the intention, by word, sign, or writing communicated or delivered to the person making the offer, or his agent. . . . A reciprocal promise is required; the party to whom the offer is made must, if he cannot directly *communicate* his acceptance, use such an agency therefor as amounts to constructive knowledge to the other party. It is nevertheless essential, to convert such proposal into a valid contract, that such acceptance be communicated to the proposer, or that some act be done by the party accepting the proposal which the other party has expressly or impliedly offered to treat as a communication." The soundness of the proposition would not be made more convincing by citing more supporting cases and authorities and we will refrain from doing so.

Some of the cited cases deal with insurance contracts, and each of them, and many others which might be referred to, hold that the principle under discussion applies to that character of contract the same as it does to others. The cited insurance cases are ones wherein the insured was seeking to hold the company by collecting the insurance. In other words, they are cases in which the insured was insisting upon a completely executed contract. There is another line of cases wherein the insurer made the insistence that the particular negotiations were sufficient to constitute a binding contract, while the insured therein contended to the contrary. Those cases arose under the contention of the defendant (insurance company) that its policy provided only for a maximum amount of insurance on the property and that additional insurance without its consent avoided its policy. In other words, those cases were where, as applied to the insured, "The shoe was on the other foot," and the courts held that the negotiations for the additional insurance, though progressed as far and in some cases farther toward a completed contract than they had in the instant case, were binding on neither party because the acceptance by the company was not *communicated* to the insured. Some of the cases so

holding are: Scottish Union, etc. Co. v. Warren, 80 Southern R. (Miss.) 9; Brown v. North River Ins. Co., 80 Southern R. (La.) 674, and Cunningham v. Connecticut Fire Ins. Co., 86 N. E. (Mass.) 787. On the question of the necessity of the communication of the acceptance of an offer for insurance, we may also insert the text in 14 R. C. L. 895, saying: "The notice of acceptance must be brought home to the insured, though constructive notice by mailing an acceptance is sufficient in the case of negotiations initiated by mail." And see also note in 9 Ann. Cas. 223.

Plaintiffs' pleadings in this case, to which a demurrer was sustained, recite *only* that they made application to defendant's agent, Eastham, through J. M. Davidson for insurance on their building to the amount of $5,000.00, and that he in turn "made application for said policy of fire insurance to Paul H. Eastham, through a letter of the date and mailed on the day aforesaid at Prestonsburg; that said letter was addressed to Paul H. Eastham at Catlettsburg, Ky., and was by him received in the United States mail at Catlettsburg at about one o'clock p. m. on Sunday, April 25th, 1920; that said Eastham at the time was, and theretofore had been, conducting a general fire insurance business in Catlettsburg, Boyd county, Kentucky, representing and being the agent for a number of insurance companies, among them being the defendant." It therein appears that Eastham not only represented the defendant, but a number of other companies, and that there was no designation by plaintiffs or Davidson of any particular company in which they desired the insurance. Neither was there any statement of the terms of the insurance either as to rate of premium or duration of the risk; and this court has held that where an agent represented more than one company and in the negotiations, though otherwise complete, there was no designation of the company, no binding contract was entered into. Hartford Fire Ins. Co. v. Trimble, 117 Ky. 583; Shawnee Fire Ins. Co. v. Roll, 145 Ky. 113; California Ins. Co. v. Settle, 162 Ky. 82; Kleis v. Niagara Fire Ins. Co., 76 N. W. (Mich.) 155; Ogle Lake Shingle Co. v. National Lumber Ins. Co., 122 Pac. R. (Wash.) 990, and Cooley's Briefs on the Law of Insurance, page 411.

If, therefore, the "binder" executed by Eastham on Sunday had been executed on any other day it was unenforceable because it contained at least three things

about which there had been no negotiations and which were never imparted to plaintiffs until after the property was destroyed. Those three things were: The company which was to assume the risk; the premium rate, and the duration of the risk, which in this case was inserted in the "binder" to be three years. Plaintiffs might not have agreed for the insurance to be written by the defendant company, nor was there anything up to the time of the execution of the "binder" to obligate them to pay the rate stipulated therein, or to accept the insurance for the full period of three years. Manifestly, under such circumstances, at that stage of the negotiations plaintiffs could not be made to accept a policy or pay the premium, and since they would not be bound on the contract (claimed to have been completed on the execution of the binder), neither would the defendant, for the law is well settled, as will be seen from the cases and authorities, *supra*, that insurance contracts, as well as all others, must be mutually binding, and if not so on one of the parties it is also of no binding force as against the other. Likewise, under the doctrine of the cases, *supra*, which had under consideration the effect of additional forbidden insurance, plaintiffs in this case could easily have rid themselves, if circumstanced so as to require it, of the insurance in contest on the ground that it had never become binding on either of the parties to the negotiations.

From the foregoing the conclusion is inevitable that what defendant's agent did on the Sunday that he received the letter from Davidson was ineffectual to bind defendant on the alleged oral contract of insurance for the single reason that he made no communication to plaintiffs of what he did or agreed to as expressed in the "binder."

But, it is contended that the writing of the policy by the agent's stenographer, whom it is alleged had knowledge of the fire, on Monday, the next day, and the mailing of it to plaintiffs was an acceptance of the risk and obligated defendant to pay the insurance. Answering that contention it may be first said that it is extremely doubtful, in the absence of facts showing otherwise, if the stenographer (who at best was only a sub-agent appointed by Eastham, the agent), could bind the defendant in any such transaction; but waiving that question and assuming for the purposes of this opinion only that the stenographer's authority was equal to that of Eastham, the

agent, and determining the question on the theory that the latter himself prepared and mailed the policy after knowledge of the fire, we are then convinced that defendant is not liable upon the ground that its agent had no authority to bind his principal by attempting to insure property already destroyed.  The very nature of an insurance contract is to indemnify the insurer against risk, and when there is no longer any risk, and the fact is known to both parties, the very purpose of the contract is destroyed, and it might be that such a contract would be against public policy.  But, whether so or not, it seems to be a well settled legal principle that an insurance agent, though he have authority to sign and deliver policies, can not bind his principal in an attempt to assume a risk which has already become non-existent.  Joyce on Insurance, vol. 1, section 106; People v. Dimick, 107 N. Y. 13; Waterloo Lumber Co. v. Des Moines Ins. Co., 158 Iowa 563, 51 L. R. A. (N. S.) 539, on page 544; Clark v. Ins. Co. of North America, 35 L. R. A. (Me.) 276; Stebbens v. Lancashire Ins. Co., 60 N. H. 65; Meade v. Phoenix Ins. Co., 158 Mass. 124; Kerr v. Ins Co., 117 Fed. R. 442; Clement's Fire Insurance, vol. 1, page 455; Gauntlett v. Sea Ins. Co., 86 N. W. (Mich.) 1047; Bentley v. Columbia Ins. Co., 17 N. Y. 421, and 19 Cyc. 592, in which latter citation the general rule is thus broadly stated: "An agent has no authority to bind his company for insurance of property which to his knowledge has already been destroyed." The reasoning underlying that rule is not only sound but it is in perfect harmony with the universally accepted doctrine of the law of agency to the effect that the principal is not bound by the unauthorized and fraudulent acts of his agent which are participated in by the other party to the contract.  In this case the policy itself had to be accepted before becoming obligatory, which under the admitted facts was not done until after the fire.

Neither may the transaction by the stenographer on Monday be treated as a ratification of what occurred on Sunday before, for the obvious reason that the ratification by the agent after knowledge of the fire is as much forbidden as his right to originally insure the property after such knowledge.  In some of the cases last cited, and others that might be, the question of the agent's right to ratify a prior imperfect transaction after knowledge of the fire was involved, and his right to make the ratification was measured by the same limitations of his au-

thority to make the contract in the original instance with the same knowledge.

Other collateral questions bearing upon those herein considered are elaborately discussed in briefs, but what we have said clearly demonstrates to our minds that the parties to this litigation never entered into a binding contract, and the court properly so held in sustaining the demurrer to the petition as amended, and the judgment is affirmed.