## HARRISON v. JOHN L. WORTHAM & SON et al. (No. 8614.)*

(Court of Civil Appeals of Texas. Galveston. Feb. 26, 1925. Rehearing Denied March 26, 1925.)

**Insurance ⚷130(1)—Contract to take insurance held not shown to have been effectuated.**

Telegraphic correspondence between insurance brokers *held* to show that offer to take insurance was withdrawn before communication of any definite, unequivocal acceptance thereof to offerers, and hence that no contract fixing any liability for premiums was effectuated.

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Action by O. L. Harrison against John L. Wortham & Son and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Andrews, Streetman, Logue & Mobley, of Houston, for defendants in error.

GRAVES, J. The statement of this cause made by plaintiff in error in his brief, corrected only as to some inaccuracies of detail pointed out by defendants in error, is accepted as a correct general one:

"By his petition the plaintiff alleged in substance that Wilcox, Peck, Crosby & Brown were insurance brokers in New York; that about the 11th day of April, 1917, John L. Wortham & Son telegraphed to the concern relative to placing war risk insurance and rates for named terms thereof on warehouses at Houston. Insurance inquired about was insurance excluded under a standard fire policy. The concern replied, giving a rate of 40 cents for three months and 50 cents for six months, calling for a full coinsurance clause and noncancellation, and giving a limit of liability on any one risk. Wortham & Son telegraphed on April 13th to bind $700,000 on cotton for Hogg, Dickson & Hogg, situated in their sheds and at shippers' compress for six months at 50 cents. They requested a wire of acceptance immediately upon completion of binder, and concluded, 'We guarantee prompt collection premium. Reference any bank in Houston.' The same day the concern wired Wortham that they had cabled a firm order for $700,000, Hogg-Dickson. On the 17th day of April Wortham wired as to whether they were able to effect binder war risk Hogg, Dickson & Hogg. On the same date this concern replied to Wortham, 'London confirms seven hundred thousand binding war risk Hogg-Dickson, fifty cents six months, full co-insurance, mailing cover note.'

---

⚷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction May 20, 1925.

On the same day Wortham replied, requesting information as to whether the binder covered certain named contingencies, and on the next day was advised by wire that in the opinion of New York senders the insurance included all risks mentioned in Wortham's telegram, which telegram also recited that they were mailing cover note.

"On April 19th this New York concern sent to Wortham a letter inclosing a cover note described as a 'Lloyd's, London, cover note' for $700,000, which, however, was only signed by Wilcox, Peck, Brown & Crosby, and a bill for the premium.

"Plaintiff further alleges that it was customary, as was known to the defendant, that on completion of contracts for insurance with companies in foreign lands there should be issued a binder binding the risk accepted until a policy could be written and delivered to the assured, and that the binder which was issued was in accordance with this custom to evidence the fact that insurance had been accepted. That on account of the war then in progress the mails between England and the United States were delayed, but that on May 9, 1917, London Lloyds executed a policy for $630,000 to Hogg, Dickson & Hogg, which was delivered by the underwriters to Wilcox, Peck, Brown, & Crosby at New York, and by them delivered to Wortham & Son by mail for delivery to the assured. On the same day the Excess Insurance Company, Ltd., executed a policy for $70,000 to Hogg, Dickson & Hogg, which was delivered to Wilcox et al., at New York, and by them delivered through the mail to Wortham & Son for delivery to the assured. The policies reached Wortham & Son about July 11, 1917. They covered against the risk caused by war, riot, or strikers, etc., and provided that they could not be canceled. That on April 19, 1917, Wortham & Son was billed for the premium of $3,377.50, which was the total premium on the policy of $3,500, less a 3½ per cent. commission to be paid Wortham. That, notwithstanding the binder and policies correctly set out the agreement relative to insurance contained in the telegrams, and notwithstanding the binder was received and accepted, following about the 20th of April, on May 10th, Wortham & Son, by telegram, refused to pay the premium until the delivery of the policy, unless Wilcox et al. would advise immediately that the binder would be completed in accordance with the original order, subject to the prompt payment of the premium upon the delivery of a satisfactory policy. That under the terms of the agreement and the policy the assured had no right to cancel them. That the premium at the agreed rate of 50 cents upon the $700,000 of insurance was $3,500. That the only objection ever raised by defendants was with reference to the payment of the premium before the policies were received. That no objection was made that the binder or the policy did not cover the contingencies against which insurance was desired, nor that they did not contain the same contract as entered into under the telegrams and correspondence. That in these transactions Wortham & Son were acting for Hogg, Dickson & Hogg, and their acts were the acts of Hogg, Dickson & Hogg. That notwithstanding the effecting of the insurance at the request of Hogg, Dickson & Hogg, through Wortham & Son, under which the premiums were to be paid by Hogg, Dickson & Hogg, and were guaranteed by Wortham & Son, Hogg, Dickson & Hogg neglected and failed and refused to pay the premium, and John L. Wortham & Son neglected and failed and refused to comply with their guarantee relative to the payment of the premium. That as a result of the action taken by Wilcox, Peck, Crosby & Brown, at the solicitation of these parties, Wilcox, Peck, Crosby & Brown became liable to the parties issuing the policies for the premium, and in fact paid the same to the insurance company. That demand has been made upon defendants for such $3,500 and payment refused. That plaintiff is the assignee of Wilcox, Peck, Crosby & Brown. Plaintiff prayed for judgment for $3,500, with interest to July 1, 1917.

"Defendants answered as to Hogg, Dickson & Hogg by a general demurrer, a general denial, and specially said that no valid contract of insurance, with or for such defendant, was ever effected, or that their proposition for insurance as submitted in Wortham's telegram was ever communicated to them, and that Wilcox et al.'s telegram of April 17th and 18th referred to the cover note, the terms of which are in part alleged. That said cover note and the telegrams did not constitute an acceptance of their request for insurance. After the receipt of the cover note, they waited more than a reasonable time for an acceptance of their offer, and on or about May 11th they withdrew their offer; such withdrawal being communicated to Wilcox et al. through Wortham & Son by telegram. That at this time the war was in force, and the United States had just entered the war, and owners of property were disturbed with fears of violence to their property by enemies situated in the United States, all of which was known to Wilcox et al., and it was on account of this hazard that the insurance was desired, and it was urgent and material to the defendant that the insurance be effected and positive acceptance of their offer communicated to them without delay. In their offer there was no proposal for payment of the premium prior to the execution and delivery of the policy, and this premium payment by law and by custom was not due or payable until the policy was received. Notwithstanding this fact, and notwithstanding no definite acceptance of their offer having been made, on May 5th a demand was made on Wortham & Son for the premium, which the defendants refused to pay until the policy was delivered to them, and this refusal was communicated to Wilcox et al. by letter and telegram. That defendants returned the cover note. On May 10th the defendants contracted with other parties for the insurance and refused to treat further with Wilcox et al. They deny any valid delivery of the policies, which they say were not in line with the cover note. That, if Wilcox et al. paid to any one any premium on these policies, the payment was made without the request of defendants and without defendants' knowledge, and was therefore a voluntary act, and no claim or right arose as a result thereof. They prayed for judgment.

"The defendant John L. Wortham & Son filed a general demurrer and a general denial, and specially denied that any valid or enforceable

contract of insurance for the benefit of Hogg, Dickson & Hogg was ever made, and denied that any acceptance of the proposal for insurance, as submitted in Wortham's telegram, was ever communicated to the defendants, because the telegram sent by Wilcox et al. to Wortham referred to a certain cover note, addressed to Hogg, Dickson & Hogg, in which it was stated that advice from London indicated that insurance had been placed, and that the "above had been received in our code, and we cannot hold ourselves liable for errors." That as a result of such language the said communication did not constitute an acceptance of the proposition for insurance. That after the receipt of the cover note Hogg, Dickson & Hogg waited more than a reasonable time for the acceptance of their offer for insurance, but none was received, so on May 11, 1917, they withdrew their proposition and communicated this withdrawal to Wilcox et al., through Wortham, by telegram and letter. That at the time of these negotiations the war was in progress and the United States was a participant, with the result that owners of property were disturbed by fears of violence to property by alien governments and their agents and sympathizers, large numbers of whom were in the United States, and many acts of violence and damage and destruction to property were being committed, as was known to Wilcox et al. That it was on account of such hazards that the insurance was desired, and it was very material to Hogg, Dickson & Hogg that the insurance be put in force, and definite acceptance of their offer communicated to them, as was known to Wilcox et al. That in the offer of Hogg, Dickson & Hogg, as communicated by Wortham to Wilcox et al., there was no stipulation for the payment of the premium for the insurance before the policy should be executed and delivered, and the consideration by law and by known custom was not due or payble until the policy should be delivered, notwithstanding the fact that there was no acceptance of Hogg, Dickson & Hogg's offer communicated to them, and notwithstanding the insurance was not then in effect, as indicated by the cover note. Wilcox et al., on or about May 5, 1917, by letter to Wortham & Son, demanded payment of the premium for insurance, which payment Hogg, Dickson & Hogg refused to make until the policy was delivered to them, and this refusal was communicated to Wilcox et al. by telegram dated May 5, 1917; that as a result of these communications the cover note was returned. On May 10, 1923, Hogg, Dickson & Hogg, in order that they might have definite insurance protection, made other arrangements for insurance, and thereafter refused to have anything to do with Wilcox et al. Defendants deny that there was any valid delivery of insurance as alleged by plaintiffs, and that the policies brought by plaintiffs were not such as the aforesaid cover note indicated would be effected. That these policies were received on July 12, 1917, by Wortham & Son, and immediately returned by Wortham & Son to Wilcox et al. That, if Wilcox et al. paid to any person any premium on the insurance alleged by them, said payment was made without the request of any of the defendants, and without the knowledge or acquiescence of any of the defendants, and therefore was an act of a volunteer, and no right of action arose as a result

of such payment as against the defendants herein. John L. Wortham & Son thereupon prayed for judgment.

"By trial amendment the plaintiff set out in full the assignment under which he claimed, and alleged that he brings this suit as assignee and individually, not only on his own behalf, but also on behalf of and for the use and benefit of the firm of Wilcox, Peck, Brown & Crosby. The defendant excepted to this trial amendment, denied the allegations contained in it, and pleaded the two-year statute of limitation and the four-year statute of limitation, 'as against any suit by plaintiff, in any other than his own right and his individual capacity, for that any such cause of action is now on this date set up for the first time, and that the same, if true, accrued more than two years and more than four years prior to this date.' The court rendered judgment in favor of defendants and against plaintiff. As a result of the plaintiff's request for findings of fact and conclusions of law the court filed the same. The findings of fact set out the telegram of April 11, 1917, from Wortham & Son to Wilcox et al., insurance brokers in New York, relative to whether bombardment insurance could be placed by them and the reply of April 12th, quoting rates on such coverage; that the expression 'firm orders only' contained in such reply means that only firm and definite orders made with authority would be accepted as distinguished from a sounding of the market. The court thereupon finds the passage of communications between Wortham & Son and Wilcox, Peck, Brown & Crosby, under communication dated April 13, 1917, April 17, 1917, April 18, 1917. The court found that the telegram of April 17th from Wortham was sent because the defendants were uncertain and desired definite, advice as to the character of insurance defined by the term 'war risk'; that the cover note referred to in the telegram was mailed from New York April 19th, and received at Houston April 23th, the terms of the cover note being set out in the findings of fact. All of these communications, including the cover note, are set out in the order of their date, under the argument to the propositions. The court found further that Wortham & Son delivered this cover note to Hogg, Dickson & Hogg, who took objection to the phrases, in that the advice from London indicated that insurance was bound, and another phrase 'the above was received on our code, and we cannot hold ourselves liable for errors, if any have been made,' and that Hogg, Dickson & Hogg were in doubt as to whether they did or did not have insurance. The court further found on May 1, 1917, by letter received May 5th at Houston, Wilcox et al. demanded immediate payment of the premium. That at the start of the negotiations relative to the insurance it was understood that the premium should be paid when the policy was delivered. On May 5, 1917, Wortham communicated to Hogg, Dickson & Hogg demand for immediate payment of the premium, and Hogg, Dickson & Hogg refused to pay the same until the policies were delivered, and Wortham so advised Wilcox et al. by telegram dated May 9th, and sets out the telegram of May 10th, relative to the same matter. On May 11th Wortham & Son, with the knowledge of Hogg, Dickson & Hogg, returned the cover note by mail with a letter.

"The court further found that it was of the utmost importance to Hogg, Dickson & Hogg, on account of the war conditions existing, to make a definite contract for the insurance sought at the earliest possible date, and that they were dissatisfied with the indefinite terms of cover note sent by Wilcox et al., and were constantly insisting of Wortham that definite contracts of insurance be made for their protection, and with their knowledge Wortham, on May 11, 1917, procured from other parties definite contracts of insurance. The court thereupon finds, as facts, the communications passing between Wortham and Wilcox et al., under dates May 15, May 18, May 19, July 7, and July 12, 1917.

"The court further found that no other communications passed between the parties except as set out. That Wilcox et al. did not deal directly with the insurers, but procured Hall & Henshaw, insurance brokers, in New York, to cable Heath & Hall, insurance brokers in London, an application for insurance, and that it was not until June 27, 1917, that Wilcox et al. received any definite or conclusive communication of acceptance of the application of the insurance for Hogg, Dickson & Hogg; the only communication in any way tending to show acceptance being the cover note delivered to them by Hall & Henshaw, April 18, 1917, which contains the same verbiage as the cover note sent by Wilcox et al. to Houston, and the policies of insurance were received by Wilcox et al. from Heath & Hall June 27, 1917.

"The court further found that the defendants did not require or authorize Wilcox et al. to guarantee to any person the payment or collection of the premium, and they had no knowledge of a guarantee until long after it is claimed that such was made; that defendants did not, at any time, request or authorize Wilcox et al. to pay any such premium; that the evidence does not show any valid policy or contract as applied for by Hogg, Dickson & Hogg ever issued by any solvent insurer for the benefit of Hogg, Dickson & Hogg. The evidence does not show what amount, if any, premium was ever received by or paid to any insurer for any insurance claimed to have been effected by Hogg, Dickson & Hogg, but on December 6, 1917, Wilcox et al. paid to Hall & Heath on account of these premiums $3,237.-50; that Hall & Heath were entitled to a commission out of the premium, but whether a further commission was paid to Heath & Hall and the amount to be paid to the insurers is not shown by the evidence. The evidence does not show that Hall & Heath were authorized by insurers to collect the premiums or that the payment made by Wilcox et al. to Hall & Henshaw was in fact payment to the insurers. That between April 13, 1917, and May 10, 1917, was more than a reasonable time to be allowed for the acceptance under the terms of the order given and the conditions existing of the insurance proposition. That there is no evidence that Wilcox, Peck et al., executed an assignment offered by plaintiff, nor that they assigned to plaintiff the cause of action asserted. That the plaintiff's trial amendment wherein he seeks recovery, not only individually, but also as assignee and for the use and benefit of Wilcox, Peck, Brown & Crosby, was filed June 26, 1923, more than four years after the accrual of the cause of action.

"The conclusions of law are that no contract of insurance for Hogg, Dickson & Hogg was ever made binding. That there was no conclusive acceptance of the offer of Hogg, Dickson & Hogg for insurance prior to the withdrawal of the offer and therefore no acceptance sufficient to consummate a contract. That no acceptance or offer for Hogg, Dickson & Hogg for insurance was ever communicated to the defendants or any of them, and therefore no contract was consummated, on the basis of their offer, and that there was never any agreement of the parties to the proposed contract for insurance, relative to the time or terms of payment of the premium, but that all parties were at all times in disagreement thereon, so that there could be no contract binding upon the parties. That Hogg, Dickson & Hogg never became bound for any premium, and that John L. Wortham & Son, merely guaranteeing the premium, were not liable in the absence of liability upon the part of Hogg, Dickson & Hogg; that in making the payment of the premium Wilcox, Peck, Brown & Crosby were volunteers in so far as defendants were concerned, and did not have any right of action against defendants for reimbursement of the money so paid. That the plaintiff is not entitled to recover in his individual capacity, because he has not shown himself to be the owner of whatever claim Wilcox, Peck, Brown & Crosby might have, and under the trial amendment filed June 26, 1923, wherein plaintiff seeks to recover in other than his individual capacity, the suit is barred by limitation. Plaintiff filed his application for writ of error."

While other matters are urged upon both sides, we think the controlling question the appeal presents is whether or not the trial court properly concluded, both upon the facts and the law, that no binding contract of insurance was effected between the parties. After a careful consideration of the record and statement of facts, we conclude it did, and affirm the judgment.

In view of the very full recitals quoted, it is not deemed necessary to now do more than particularize such features of the transaction as it is thought this result rightly flows from.

The issue is neither one of whether the insurance was to be noncancelable (the express terms of the tentative negotiations definitely fixing that) nor one of whether insurance first effected was thereafter canceled, as plaintiff in error apparently argues, but wholly one of whether or not there was any binding agreement for the insurance brought about before a withdrawal in behalf of defendants in error of their offer to contract for it.

Nowhere in the record before us is there any basis for a claim, indeed we do not understand one to be made, that such an order for insurance as was here made—described in the correspondence as a "firm" or definite offer to take it—could not be withdrawn if not unequivocally accepted within a reasonable time.

Wortham & Son made a preliminary tele-

graphic inquiry of the brokerage firm of Wilcox, Peck, Brown & Crosby at New York on April 11, 1917, as to whether they could place the insurance, asking rates and extent of coverage, to which they replied by wire the next day, outlining the contract, its terms, and conditions; then on April 13th Wortham & Son telegraphed them their definite offer for the insurance, concluding:

"Please rush and wire acceptance immediately upon completion of binder. We guarantee prompt collection premium. Refer any bank in Houston."

To this the brokers likewise replied on the same day:

"Yours, war insurance. Have cabled firm order seven hundred thousand Hogg, Dickson, and sixty-five thousand Andrews; probably confirm Monday."

On April 17th the Worthams asked them by wire, "Were you able to effect binder war risk, Hogg, Dickson & Hogg?" which they answered on the same day with a telegram reading:

"London confirms seven hundred thousand binding war risk Hogg, Dickson fifty cents six months full co-insurance. Also sixty-five thousand Andrews forty cents three months full co-insurance; mailing cover note."

Still on April 17th Wortham & Son, desiring more definite information, sent them this message:

"We understand binder Hogg, Dickson & Hogg covers loss or damage by fire resulting from war, riots, commotions, strikes, insurrections, rebellions, maliciousness, invasions, also loss or damage by bombardment and explosions except boiler explosions as our client desires confirmation extent of coverage; wire if above correct."

In response by a wire of April 18th the brokers said:

"In our opinion war risk insurance Hogg, Dickson & Hogg includes loss or damage from all causes mentioned in your night letter seventeenth. Mailing cover note."

Then by a letter to Wortham & Son, dated April 19, 1917, the brokers stated that they inclosed "Lloyd's, London, cover note in the amount of $700,000,00," etc., but the cover note, when received on April 23, 1917, was signed by Wilcox, Peck, Brown & Crosby, dated April 18, 1917, addressed to Hogg, Dickson & Hogg, and reads as follows:

"Cable advices from London indicate that insurance of $700,000.00 is held binding by underwriters at Lloyd's, London, England, for your account for six (6) months from April 16, 1917, at 50 cents as per form attached hereto: (We here omit the 'form,' which describes the property covered, its location, the risks against which insured, contains 'average clause,' and provides manner of payment of any loss, with other details not material on this appeal.) The above is received on our code, and we cannot hold ourselves liable for errors if any have been made. * * * On receipt of policy we will advise you."

As it affected defendants in error, and without material change, here the transaction stood until May 10, 1917, nothing tending to indicate acceptance of their offer to take the insurance other than what is reflected in the correspondence between the parties just detailed, having been up to that date communicated to them. On May 10, 1917, they finally withdrew their offer, and took insurance elsewhere.

It is true there was testimony to the effect that two insurance policies, which plaintiff in error claims were those referred to in the cover note, were issued in London, England, on May 9th, but defendants in error had no notice of that until after they had definitely and finally withdrawn their offer and made other arrangements.

It thus appears that the offer of defendants in error, through the Worthams, to enter into a contract of insurance on their property was made on April 13th, and withdrawn on May 10th, before any definite and unequivocal acceptance thereof was communicated to them. Even a casual inspection of this telegraphic correspondence discloses that the New York brokers never positively advised Wortham & Son that their order for the insurance had been accepted and the protection secured, but throughout the negotiations attached strings to their responses so that the latter and their principals were never able to determine therefrom whether or not any insurance was in force. This qualification began with appending the words "mailing cover note" to their telegram of April 17th, saying "London confirms seven hundred thousand binding war risk Hogg Dickson," was repeated by the use of the same expression in their answering message of April 18th to Wortham's inquiry for more certain information, wherein they further clouded the situation by telling the Houston agents that "in our opinion" war risk insurance includes loss, etc., and culminated in the cover note itself, in which it was stated, not only that "cable advices from London indicate that insurance of $700,000.00 is held binding," but also that "the above is received on our code and we cannot hold ourselves liable for errors if any have been made."

During the very time these evasions and mental reservations were thus being indulged in in New York to the discomfiture of all the defendants in error, as the trial court found in an unattacked conclusion, "it was very material, even of urgent importance, to Hogg, Dickson & Hogg, in the war-time condition then existing, to make definite contract for the insurance sought at the earliest possible date; they were at all times dissatisfied with the indefinite and inconclusive terms of the cover note sent by Wilcox, Peck,

Brown & Crosby, and were constantly urging and insisting to John L. Wortham & Son that definite and certain contracts or agreement of insurance be made for their protection, and with their knowledge, consent, and authority John L. Wortham & Son, on May 11, 1917, procured from other parties such definite contracts or agreements of insurance."

The court's eleventh finding "that the period from April 13, 1917 (when defendant's order on application for insurance was made), to May 10, 1917 (when said order, application or offer was definitely and finally withdrawn by defendants), was more than a reasonable time to be allowed for definite and conclusive acceptance, under the terms of the firm order given, and conditions then existing," is not attacked either, as concerns the reasonableness of the time involved, it being merely argued in this connection that the order for the insurance had been accepted prior to May 10, 1917; so that, if there had been no such acceptance, as we have concluded the record conclusively shows, the determination that the offer was withdrawn, and that after a reasonable time, stands unchallenged.

Under these conclusions upon the facts it follows under well-settled authorities that no contract of insurance fixing any liability for premiums thereon against defendants in error was effectuated. 1 Williston on Contracts, § 72, p. 127, §§ 54, 55, pp. 91, 94; Martin v. Fuel Co. (C. C. A.) 22 F. 596–600; Hopkins v. Ins. Co., 200 Ky. 365, 254 S. W. 1041, and authorities there cited.

This conclusion determines the merits of the appeal, and renders unnecessary a discussion of additional considerations.

An affirmance has accordingly been ordered.

Affirmed.