## Minnesota Mut. Life Ins. Co. v. Meidinger.

(Decided June 7, 1938.)

70

WM. MARSHALL BULLITT, R. L. BLACKWELL and BRUCE & BULLITT for appellant.

WOODWARD, DAWSON & HOBSON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Minnesota Mutual Life Insurance Company, hereinafter referred to as the company, is appealing from a judgment in favor of B. R. Meidinger for $771.19, entered in conformity with a directed verdict.

In his petition appellee alleged in substance that he is a regularly licensed and acting insurance agent and broker; that on May 19, 1936, he agreed with the company's agent, Virgil Duffin, to submit to the company an application of Mary Cralle for a life annuity contract in the sum of $15,000.00 for which the company by its agent, Duffin, agreed to pay him commissions of 5½ per cent. on the life premium and 3 per cent. on the annuity premium; that the application submitted was accepted by the company, the policy issued by it was delivered to and accepted by insured who retained same and paid the premium; that the company failed and refused to pay the commission as agreed amounting to the sum of $771.19. He further alleged that Duffin as agent for the company had previously contracted with him for similar services which had been paid and through such course of dealings, Duffin, as agent, held himself out as having authority to make such contract on behalf of the company, and in fact did have such authority.

The issues were completed by answer making a general denial of the allegations of the petition.

Grounds argued for reversal in substance are (1) that appellant was entitled to a peremptory instruction because (a) appellee's brokerage commission contract was with Duffin individually and not with appellant, (b) appellee's collusion with Duffin in suppressing from appellant his connection with the application by false certification that no broker was included, bars him from asserting that Duffin made the alleged commission contract in his capacity as general agent so as to bind appellant; and (2) that the court erred in giving a peremptory instruction for appellee.

The evidence shows that the company had given notice that on and after May 20, 1936, it would not

accept application for this character of contract from or through brokers. Duffin had received notice to that effect and appellee admitted that he also knew it. The application was taken to Duffin's office by appellee on the night of May 19, and it and all other papers in connection with it were completed there at that time. Duffin's name appears on the application both as agent and general agent. He made an affidavit as to what appeared from a family Bible concerning the age of the applicant. He also made out and signed in the presence of appellee a confidential report in which he answered ''No'' to the question: ''Was the application suggested to you by a broker or agent of another company?''

The evidence of appellee indicates that he knew the question was answered that way and the evidence of Duffin to that effect is positive. There was nothing in the application and confidential report or any other papers accompanying the application to bring notice to the company that appellee had any connection whatever with this transaction. Appellee had previously procured similar policies for other persons from appellant through Duffin but in every instance except this and possibly one other, there was a written contract between him and Duffin made on regular forms furnished by the company and which were approved by it. At the same time or at least on the same day that appellee submitted the Cralle application to Duffin he also submitted to him a similar application of Mrs. Mary E. Evans but for some reason appellant refused to issue to Mrs. Evans a policy; but as appears from the record it learned of appellee's connection with the Evans application and wrote Duffin apparently taking him to task for accepting the business from a broker and purporting to give information in connection with the application concerning matters not within his own knowledge.

On June 25, 1936, Duffin wrote the company in reply to a letter he had received from it on June 20th. In the course of this letter it is said:

''Mr. Meidinger has sold Mrs. Evans a number of annuity contracts and he had secured this additional application, bringing it to me as a brokerage case, and in learning that we did not accept such brokerage business he offered me the opportunity

of accepting the application in view of a number of past favors and he of course to receive no commission.''

While appellee testified in effect that it was the agreement and understanding between him and Duffin that he would get a commission on the Cralle policy from appellant, he admitted that when his deposition was taken as if on cross examination he was asked the following questions to which he made the following answers:

"Q. What was the agreement then in respect to the Cralle transaction? A. Well, it was the same agreement that we had on Mrs. Alstedt.

"Q. What was that? A. That was that Mr. Duffin was to put these through in his own name; that he would pay me five and a half per cent on the life part and three per cent on the annuity part.

"Q. That is, those percentages are percentages on premiums paid? A. Yes sir.

"Q. That was to be your commission? A. That is right.

"Q. He agreed that he would pay that? A. He agreed when the company paid him he would pay me.''

He admitted that these answers when given were correct. Mr. Duffin, whose connection with appellant had been severed, was called as a witness by it. He testified that appellee submitted to him the Cralle and Evans applications which he forwarded to the company on the night of May 19; that Meidinger had no interest in the Evans application because it was a second application that had been submitted to the company and it was doubtful whether the contract would be delivered; that it was understood that appellee would receive no commission on it. Mr. Duffin did not state positively that he made a contract on behalf of appellant to pay appellee a commission in connection with the Cralle application.

Concerning the agreement to pay a commission to appellee and why the usual form of contract in such cases was not made out, Duffin stated:

"On this particular night of May 19, we came down to the office and I had no single case blank, and therefore I could not make out a single case contract, and Mr. Meidinger was willing to look to me for the commission, not being an agent of the company, believing at the same time that when he dealt with me I would bind the company."

Further on, he testified:

"The contract I had with him was me being an agent of the company he was to receive 3 per cent on part of $15,000.00 and 5½ per cent on the other part of the $15,000.00."

He further testified that appellee could not receive any commission until the contract had been executed, delivered and paid for and the company had sent a check to him and appellee; that it was understood that the check would be sent to him and that he would give his personal check to appellee for the latter's portion of the commission. He indicated, however, that this was the way previous transactions with appellee had been handled. There is no claim that Duffn as general agent of the company had no authority to make the contract; it is merely denied that he made it in this instance. While there is some evidence conducing to show that he did make a contract with appellee as alleged in the petition, the evidence on the whole and the proven facts and circumstances and inferences naturally arising from them strongly indicate otherwise and conduce to show that this was merely a private agreement and understanding between appellee and Duffin and not intended to bind the company but to be kept a secret from it.

In peremptorily instructing the jury to return a verdict for appellee the court said in effect that the company procured the business through the efforts of appellee and admitted its obligation to pay a premium thereon; that it claimed to have properly applied the premium but that in his opinion it was improperly applied. It appears in evidence that appellant has applied the premium to discharge of indebtedness which it claimed Duffin owed it. From the record as a whole it is our conclusion that an issue was made by pleading and proof as to whether the contract alleged in the petition was actually made which should have been submitted to

74

the jury and therefore appellant's contention that it was entitled to a peremptory instruction cannot be sustained on the first ground assigned; and this in effect disposes of the second ground argued for reversal since it necessarily follows from what we have already said that the court erred in peremptorily instructing the jury to find for appellee.

Concerning the second reason assigned why a peremptory instruction should have been given for appellant, it is urged by counsel for appellee that there was no plea of fraud or collusion on the part of appellee and Duffin. As a general rule it requires both pleading and proof to sustain a cause of action or defense and neither without the other is sufficient. However, since the judgment must be reversed for the reasons assigned and the pleadings may and likely will be reformed in the event of another trial this question is specifically reserved.

It is asserted in brief for appellee that appellant knew at the time it accepted the application and issued the policy that appellee was the broker but as we understand the record the court excluded all the evidence attempted to be introduced to show that appellant had such knowledge at the time. We might also add that there is nothing in the pleadings relating to that matter.

For the reasons assigned the judgment is reversed for a new trial in conformity with this opinion.