## Minnesota Mut. Life Ins. Co. v. Meidinger.

Dec. 8, 1939.

William Marshall Bullitt, Robert Lee Blackwell and Bruce and Bullitt for appellant.

Robert P. Hobson and Woodward, Dawson & Hobson for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This is the second appeal of this case, the opinion on the first appeal being found in 274 Ky. 69, 118 S. W. (2d) 130. On the return of the case to the circuit court, verdict and judgment were again for the appellee, Meidinger, resulting in this appeal. The facts were stated in the former opinion and it is unnecessary to restate them here since the evidence was substantially the same as on the first trial. We will mention only such additional facts and evidence as are material to a consideration of one aspect of the case which we have determined entitles the appellant, Minnesota Life Insurance Company, to a reversal.

On the former appeal it was contended that the appellant was entitled to a directed verdict because Meidinger's collusion with Duffin in suppressing from the Company his connection as broker with the insurance policy in question estops him from asserting that Duffin made the commission contract in his capacity as general agent so as to bind the Company. Concerning this contention, it was said in the former opinion [274 Ky. 69, 118 S. W. (2d) 133]:

> "As a general rule it requires both pleading and proof to sustain a cause of action or defense and neither without the other is sufficient. However, since the judgment must be reversed for the reasons assigned and the pleadings may and likely will be reformed in the event of another trial this question is specifically reserved."

Prior to the second trial the Company amended its answer, pleading this matter in detail as a bar to Meidinger's right to recover against it. The decision of this question now confronts us.

Stated more broadly, the Company's position is that one may not recover against a principal on a contract made with an agent, purporting to bind the principal, when the one seeking such recovery colluded with

the agent in suppressing from the principal the existence of the very contract on which he seeks to recover and his own connection therewith. We have no doubt as to the soundness of this position, provided knowledge of the contract and the plaintiff's connection therewith were material to the principal in passing on the rejection or acceptance of a collateral agreement on which the contract depended and provided the plaintiff was aware of the materiality of such knowledge to the principal.

This principle, stated concretely in its application to the present controversy is in substance as follows: If the Company would not have issued the policy to Mrs. Cralle had it known of Meidinger's connection therewith as broker, and if Meidinger knew that it would not have issued the policy possessing that knowledge, he may not recover a broker's commission from the Company if he was aware that his connection with the policy as broker was being concealed from the Company by Duffin, the very agent through whose agreement he seeks to fasten liability on the Company as a principal bound by such agreement. This is in accord with the well established rule that one who induces an agent to betray his principal should not be permitted to profit by the betrayal. See Hopkins et al. v. Phoenix Fire Insurance Company, 200 Ky. 365, 254 S. W. 1041; Barnett v. Kunkel, 8 Cir., 259 F. 394; Engell v. Union Central Insurance Company, Tex. Civ. App., 81 S. W. (2d) 738.

Perhaps the proposition, as we have stated it, goes a step farther than the cases cited and the general run of cases dealing with such situations, in that we say that *knowledge* of the agent's betrayal of the principal, rather than actual participation therein interposes a bar to recovery, but it seems there can be no doubt as to the soundness of the proposition where such knowledge extends to the concealment from the principal of the very contract sued on. Knowledge of a concealment of this character by the agent is the constructive equivalent of an actual participation in the concealment.

Examining the evidence in the light of the applicable principles, it is readily seen that the Company would not have issued the policy had it known that it was being brokered by Meidinger. To this effect we have the positive testimony of the Company's underwriting officer. Even more convincing than this testimony is the

correspondence between the Company and Duffin prior to the receipt of the application for the policy. Duffin was notified that on and after May 20, 1936, *no* single premium business would be accepted from brokers. By telegram of April 10 the Company rejected an application for a similar policy brokered by Meidinger, saying:

> "You realize this business not profitable and that only an exceptional case is taken from brokers. Feel that case under consideration (referring to another application brokered by Meidinger on April 6) is sufficient to grant this broker (Meidinger). Therefore, must decline this (Bockhorst) application."

On the same day the Company confirmed this telegram by letter explaining at length why it would not accept Meidinger's single premium business. This letter recited that only recently the Company had considered an application for a policy of $12,000, from this same broker and

> "The fact is, Duffin, that we have simply got to stop brokerage business on this type of insurance
> *   *   *
> "I believe you can see the seriousness of this whole situation, and the absolute necessity of the Home Office limiting these applications to the business originating with our own agents if we are to continue this contract in our portfolio."

Thus it clearly appears that the Company would not have issued the policy had it possessed knowledge of Meidinger's brokerage connection and that Duffin knew this. Duffin's protestations in his testimony that his company's knowledge of brokerage was not material possess no force in the face of this evidence—his protestations are merely his own illfounded conclusions in conflict with indisputable facts.

Duffin, knowing that Meidinger's brokerage connection with the policy application would, if known to the company, result in its rejection, deliberately concealed the brokerage feature from his company and Meidinger knew he was concealing it. Duffin's confidential report on the policy application contained this question and answer:

> "Q. 9. Was the applicant suggested to you by a broker or an agent of another company? (If so, explain.) A. No."

Meidinger knew that Duffin made this false report concealing his (Meidinger's) brokerage connection with the policy, as witness his own testimony,

"Q. You knew that Mr. Duffin was writing in the word 'No' did you not?   A. Sure."

"Q. Was that answer false or true?   A. So far as I was concerned it was false."

"Q. And so far as Duffin was concerned it was false, was it not?   A. I presume it was   *   *   *."

"Q. In other words, you knew that he was sending a false confidential report to the company as to whether or not you had any connection with this application?   A. Well, if you put it that way, I will have to say, yes."

Further, there is no escape from the conclusion that Meidinger was aware that knowledge of his brokerage connection with the policy was material to the Company and would likely result in rejection of the application. He was an insurance agent of many years experience. He had brokered other policies with this company and had signed the Company's brokerage agreements, on which, in bold type, immediately adjacent to his signature, appeared a notation to be signed by a company official approving such single case agreement.   The Bockhorst application, brokered by him, had been declined by the Company on April 10 on account of his brokerage connection therewith.   It is inconceivable that this rejection and the reason therefor had not been communicated to him by Duffin.   Again, Duffin's letter of June 25 to his company indicates clearly that Meidinger knew on May 19 that the Company would not issue any more policies brokered by him.   Duffin wrote:

"Mr. Meidinger has sold Mrs. Evans a number of Annuity Contracts and he had secured this additional application, bringing it to me as a brokerage case, and in learning we did not accept such brokerage business he (Meidinger) offered me the opportunity of accepting the application in view of a number of past favors and he was, of course, to receive no commission."

This letter concerned a policy application of a Mrs. Evans turned over to Duffin by Meidinger on May 19 without agreement for commission.   This action on Meidinger's part, according to the letter, was because he

had learned the Company did not accept brokerage business, so, necessarily, Meidinger knew on May 19 when the application on the Cralle policy was filled out by Duffin that the brokerage feature was a very material one to the Company and would result in a rejection of the application, because the Evans policies were turned over to Duffin on May 19.

Further, on cross examination he stated that he knew that the Company would want to know whether or not he had any brokerage connection with the application. He also disclosed his belief that as a broker he was thereby becoming an agent of the Company and admitted that he realized the Company would want to know who was being made its agent and for whose acts it would be responsible. The evidence appears to us to demonstrate conclusively that Meidinger realized that a disclosure to the Company of his brokerage connection would have resulted in rejection of the application. Knowing this, he stood by and saw Duffin certify to his company that there was no brokerage.

The explanation that the brokerage feature was not revealed because Duffin had no single case contract forms available is not convincing. These forms could have been filled out and sent in later. In any event, the situation did not justify a concealment of this material fact from the Company.

From our discussion of the evidence, it is apparent that the legal principle stated is peculiarly applicable to this controversy. It is our conclusion that the trial court should have directed a verdict in appellant's behalf on this ground. No other question is decided.

Judgment reversed with directions to grant appellant a new trial and for further proceedings not inconsistent with this opinion.

The whole Court sitting.