**PUBLIC NATIONAL INSURANCE COMPANY, Plaintiff,**

v.

**Mrs. Ellen L. MOORES, Administratrix, etc. et al., Defendants.**

**No. 140.**

United States District Court
E. D. Kentucky at Richmond.
July 2, 1956.

Joseph E. Stopher, A. J. Deindoerfer, Louisville, Ky., and William R. Alvin, Miami, Fla., Julian W. Knippenberg, Lexington, Ky., for plaintiff.

Thomas D. Shumate, Richmond, Ky., for defendant Mrs. Ellen L. Moores.

Eugene Wiggins and W. S. Jett, Richmond, Ky., for defendant Leon Moores.

Charles Coy and James Chenault, Richmond, Ky., for defendant Harold Rabb.

Roy E. Tooms, Jr., London, Ky., for defendants Donald Elwood Crook and others.

FORD, Chief Judge.

This is an action for a Declaratory Judgment under 28 U.S.C.A. § 2201. The Court has jurisdiction of the parties and the subject matter. 28 U.S.C.A. § 1332.

The controversy arises by reason of claims asserted by the defendants against the plaintiff, Public National Insurance Company, based upon an alleged

oral contract of casualty insurance covering an automobile owned by Lieutenant Roy Moores at the time of an accident involving his car on May 27, 1954, which resulted in his death and damages to defendants.

Lieutenant Moores was in the United States Army and his post of duty was at Ft. Sill, Oklahoma. On May 17, 1954, he purchased a new Ford automobile from a local dealer at Richmond, Ky. He applied to Charles Jett, an insurance agent at Richmond, for casualty insurance on his car. It appears that casualty insurance covering automobiles of members of the Armed Forces is classed as a "substandard risk". Many casualty insurance companies do not insure that character of risks. The premium is considerably higher than casualty insurance on automobiles generally. None of the several companies represented by Mr. Jett insured such sub-standard risks. He endeavored, however, to put Lieutenant Moores in touch with an insurance company willing to issue such insurance. After having the risk declined by several insurance agents to whom he applied, Mr. Jett finally sought the aid of Mr. Frank Morgan, whom he met at the Richmond Country Club about noon on May 26, 1954. Mr. Morgan was the underwriting manager of one of the companies for which Mr. Jett was the local agent at Richmond. After informing Mr. Jett that Lieutenant Moores' insurance risk would not be taken by his company, Mr. Morgan placed a telephone call to Jack Spurlin, an insurance agent at Louisville, in an effort to locate an insurance company which handled sub-standard risks. Mr. Spurlin was the general agent for the plaintiff and, on its behalf, had authority to insure sub-standard risks.

The defendants claim that the result of the telephone conversation which ensued between Frank Morgan and Jack Spurlin was a valid and enforceable parol contract of insurance *in praesenti* whereby the plaintiff insured Lieutenant Moores and and his estate against damage to his automobile and against liability for damages or injuries to others which resulted from the collision with Moores' car.

■■ Under the law of Kentucky, a parol contract of insurance is valid only when there is mutuality of obligation and the minds of the parties have met in mutual agreement upon all its essential elements. The essential elements of such a contract have been reiterated many times by the Court of Appeals of Kentucky and are: (1) The subject matter; (2) the risk insured against; (3) the rate of premium; (4) duration of the risk; (5) the amount of insurance, and (6) identity of the parties. Campbell v. Aetna Insurance Company, Ky., 269 S.W.2d 292, 294, and cases cited therein.

■ Recognizing that a parol contract of insurance is not the ordinary or usual method of transacting such business, the law imposes a heavy burden of proof upon one relying thereon by requiring that "Such contract must be clearly and convincingly established in every particular." Continental Insurance Co. of New York v. Baker, 238 Ky. 265, 272, 37 S.W.2d 62, 65; Travelers Fire Insurance Co. v. Bank of Louisville, Ky., 243 S.W.2d 996, 998.

■ The testimony in reference to the details of the conversation between Morgan and Spurlin on May 26, 1954, falls far short of clear or convincing evidence that a contract of insurance, *in praesenti*, was contemplated. Being insurance agents themselves, they understood that much additional information, not then available, was essential to such a contract. Moreover, it is not shown by the testimony that either Mr. Jett or Mr. Morgan ever discussed with Lieutenant Moores the amount of liability against which he was to be insured, the duration of the risk or the extraordinary premium which it would have cost. They were not authorized to contract for Lieutenant Moores in respect to those essential elements of such insurance. In reference to his discussion of the matter with Lieutenant Moores, Mr. Jett testi-

fied: "He told me he wanted collision insurance on his car and he wanted comprehensive coverage on his car and, of course, liability; but the amount of liability was never mentioned, to my knowledge." Mr. Morgan testified that he merely gave Mr. Spurlin "what limited information Jett had at the moment" and, in answer to the following questions made the following answers: "Q. 107. Getting back to your conversation with Mr. Spurlin, did you at that time mention to him the duration of this policy? A. I did not. * * * Q. 116. Did you and Mr. Spurlin over the telephone have any discussion of the amount of the premium on this policy? A. No."

The accident which resulted in the death of Lieutenant Moores occurred about 7 p. m. on May 27, 1954, and whatever conversation may have taken place between Mr. Morgan and Mr. Spurlin on the day before his death, it is quite clear that Lieutenant Moores never knew of it. He was never informed of any casualty insurance covering his car or of any obligation on account thereof.

In Hopkins v. Phoenix Fire Insurance Company, 200 Ky. 365, at page 371, 254 S.W. 1041, 1043, plaintiffs sought enforcement of an alleged contract of insurance, in respect to which there had been no negotiations relative to the company which was to assume the risk, the premium rate and the duration of the risk; the Court said:

"* * * Plaintiffs might not have agreed for the insurance to be written by the defendant company, nor was there anything, up to the time of the execution of the 'binder,' to obligate them to pay the rate stipulated therein, or to accept the insurance for the full period of three years. Manifestly, under such circumstances, at that stage of the proceeding plaintiffs could not be made to accept a policy or pay the premium, and since they would not be bound on the contract -(claimed to have been completed on the execution of the binder), neither would the defendant, for the law is well settled, as will be seen from the cases and authorities supra, that insurance contracts, as well as all others, must be mutually binding, and if not so on one of the parties it is also of no binding force as against the other."

Testing the proof presented in this case by the rules of law to which reference has been made, we find it palpably insufficient to establish the parol contract of insurance upon which the claims of the defendants are based. Judgment will be entered accordingly.

Counsel for plaintiff will prepare, serve and submit for entry a Declaratory Judgment in conformity herewith.